**Garry DeYOUNG, Appellant,**

v.

**Larry G. PATTEN, Executive Director; John C. White, Program Director; Iowa Public Television; Dean Borg; Iowa Public Broadcasting Network, Appellees.**

No. 89–1037.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 15, 1989.

Decided March 14, 1990.

---

Garry DeYoung, pro se.

Lynn M. Walding, Des Moines, Iowa, for appellees.

**630**

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Garry DeYoung appeals pro se from a final order entered in the District Court[1] for the Northern District of Iowa dismissing his case for failure to state a claim upon which relief could be granted. *DeYoung v. Patten*, No. C–86–4163 (N.D.Iowa Dec. 13, 1988).[2] DeYoung sued Iowa Public Television (IPT), Iowa Public Broadcasting Network (IPBN),[3] Larry G. Patten, executive director of IPT, John C. White, program director of IPT, and Dean Borg, a speaker or commentator on the program *Iowa Press*, alleging they had committed various constitutional and statutory violations in connection with their coverage of his unsuccessful 1984 United States Senate campaign. For reversal DeYoung argues the district court erred in holding there was no state action for purposes of 42 U.S.C. § 1983 and no implied private right of action for damages for violation of the equal time provision of the Federal Communications Act, 47 U.S.C. § 315(a).

For the reasons discussed below, we affirm the order of the district court. DeYoung's motions for appointment of counsel and to remand the case to the district court for further proceedings are dismissed as moot.

PROCEEDINGS IN DISTRICT COURT

Both of DeYoung's complaints involved his unsuccessful 1984 campaign for the office of United States Senator from Iowa. DeYoung was a legally qualified candidate; the "major" political party candidates were Tom Harkin and Roger Jepsen. DeYoung alleged that IPT, White and Patten conducted and televised a debate between Harkin and Jepsen only, excluded him from the candidates' debate, and denied his request for equal air time. DeYoung also alleged that Borg discussed the U.S. Senate campaign on the program *Iowa Press* without

mentioning his candidacy, despite his prior request for "fair treatment." DeYoung alleged that defendants' conduct violated his first amendment right to freedom of speech and access to the public, manipulated the political process, contributed to his loss of the 1984 election, and denied him equal protection. DeYoung sought only monetary damages ($20,000 against IPT, White and Patten; $10,000 against Borg) for "social ostracism, denial of access to the public, manipulation of the political process, and mental anguish."

The district court granted DeYoung's request for leave to proceed in forma pauperis. The state attorney general represented all defendants. Defendants filed motions to dismiss, alleging that IPT as a state agency (the public broadcasting division of the state Department of Cultural Affairs) was entitled to eleventh amendment immunity and that DeYoung had failed to state a claim against White, Patten and Borg because DeYoung had no first amendment or statutory right to appear on public television or on a particular program and had failed to allege any class-based discrimination. Defendants also argued that there is no private right of action for damages for violation of the equal time provision of the Federal Communications Act, 47 U.S.C. § 315(a), and that any statutory duty thereunder is imposed on the broadcast licensee, not individual reporters, commentators or producers of particular programs. In response, DeYoung clarified his equal protection claim to allege that defendants improperly treated major party candidates differently than minor party and independent candidates.

In December 1987 the district court dismissed DeYoung's claims against Borg, holding that DeYoung had no first amendment right to compel Borg "as a television news commentator" to discuss his political candidacy on the program *Iowa Press*. *DeYoung v. Patten*, No. C–86–4163, slip

---

1. The Honorable Donald E. O'Brien, Chief Judge, United States District Court for the Northern District of Iowa.

2. DeYoung filed two related pro se petitions. The two petitions were assigned a single docket number and treated as one case in the district court and on appeal.

3. IPT was formerly known as IPBN.

op. at 2 (N.D.Iowa Dec. 18, 1987) (order), *citing Christian Populist Party v. Secretary of State*, 650 F.Supp. 1205, 1213 (E.D. Ark.1987) (newspaper). The district court also held that it lacked subject matter jurisdiction over DeYoung's claim that he had been denied equal time because, under the Federal Communications Act, 47 U.S.C. § 315(a), such a claim was within the exclusive jurisdiction of the Federal Communications Commission (FCC). Slip op. at 5. The district court decided that it needed more information about whether IPT, White and Patten acted "under color of state law" for purposes of 42 U.S.C. § 1983 and whether IPT was a state agency or merely a "lesser governmental unit" and invited supplemental briefing.

Following supplemental briefing and a hearing conducted at least in part by telephone, the district court dismissed the claims against the remaining defendants. The district court held that there was no "state action" for purposes of 42 U.S.C. § 1983 because the actions of IPT, White and Patten with respect to DeYoung's exclusion from the televised debate or debates could not be "fairly attributed" to the state. *DeYoung v. Patten*, No. C–86–4163, slip op. at 2–3 (N.D.Iowa Dec. 13, 1988) (order), *citing Sinn v. The Daily Nebraskan*, 829 F.2d 662, 665 (8th Cir.1987). The district court found that the state had administratively distanced itself from the editorial and programming decisions made by IPT, White and Patten. Slip op. at 2. This appeal followed.

STANDARD OF REVIEW

In reviewing a Fed.R.Civ.P. 12(b)(6) dismissal for failure to state a claim, we accept the allegations in the complaint as true. The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim that would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Read liberally, DeYoung's complaint raised two claims. First, he alleged that all defendants violated his first amendment rights by excluding him from the televised candi-

dates' debate and the program *Iowa Press*. Second, he alleged that defendants' conduct denied him "fair treatment" in violation of the "equal time" provision of the Federal Communications Act.

STATE ACTION

■ In the present case the district court applied the four-factor "state action" analysis set forth in *Sinn v. The Daily Nebraskan* and held defendants did not act "under color of state law." We disagree with the district court that defendants did not act under color of state law in excluding DeYoung from the candidates' debate and the program *Iowa Press*. For the reasons discussed below, we hold that the *Sinn v. The Daily Nebraskan* analysis is inapplicable and that there was state action. However, we affirm the district court order dismissing the complaint because we agree that DeYoung's complaint failed to state a claim.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (physician under contract with state to provide medical services to prisoners held state actor). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrong-doer is clothed with the authority of state law.'" *Id.*, *citing United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.*, *citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

In *Sinn v. The Daily Nebraskan* the defendants were the student editors of the student newspaper at a state university. The students were private parties; they were not state employees or under the control of state university officials. In that case, the students were "private actors" interposed between the plaintiffs and the state. In deciding whether the actions of private actors could be attributed to the state for purposes of 42 U.S.C. § 1983, the court considered the extent of state regulation, the receipt of public funds, the type of function involved, and the presence of a symbiotic relationship. 829 F.2d at 665, *citing Rendell–Baker v. Kohn*, 457 U.S. 830, 840–42, 102 S.Ct. 2764, 2770–71, 73 L.Ed.2d 418 (1982) (employment decision of private school almost wholly funded by state and extensively regulated held not state action), *and Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982) (placement decisions made by private nursing home that received government funds and was heavily regulated by state held not state action). *See also San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (USOC is a private, not-for-profit corporation established under federal law, partly funded through federal grants and federal statute granting its exclusive use of Olympic words and symbols; held no government action); *Fulani v. League of Women Voters Education Fund*, 684 F.Supp. 1185, 1189–92 (S.D.N.Y.1988) (no state action when private organization holds candidates' debate), *aff'd*, 882 F.2d 621 (2d Cir.1989). *Cf. Gay & Lesbian Students Ass'n v. Gohn*, 850 F.2d 361 (8th Cir.1988) (student senate's funding decisions not free from state university control held state action).

Unlike *Sinn v. The Daily Nebraskan*, however, the present case does not involve private actors. IPT is not a private entity; it is a state agency, the public broadcasting division of the state's Department of Cultural Affairs. And, at least for purposes of the motion to dismiss, White, Patten and Borg are employees of IPT, that is, public employees, and not private actors.

"[S]tate employment is generally sufficient to render the defendant a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. at 936 n. 18, 102 S.Ct. at 2753 n. 18.

> It is firmly established that a defendant in a § 1983 suit acts under color of state law when he [or she] abuses the position given to him [or her] by the State. Thus, generally, a public employee acts under color of state law while acting in his [or her] official capacity or while exercising his [or her] responsibilities pursuant to state law.

*West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 2255–56, 101 L.Ed.2d 40 (1988) (citations omitted). *But cf. Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defenders not state actors; emphasis upon adversarial function). Because no private party stands between the state and DeYoung, there is no need to determine whether defendants' alleged actions infringing DeYoung's federal rights can be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. at 937, 102 S.Ct. at 2753. For this reason, the question whether the actions of a private party can be "fairly attributed" to the state within the meaning of 42 U.S.C. § 1983 does not arise and the *Sinn v. The Daily Nebraskan* analysis does not apply. Patten, White and Borg, as state employees, acted under color of state law for purposes of § 1983.

## FIRST AMENDMENT

■ We next consider DeYoung's constitutional claim. DeYoung alleged that defendants violated the first amendment by excluding him from the candidates' debate and the program *Iowa Press*. We think the district court correctly dismissed DeYoung's first amendment claim for failure to state a claim because, as a candidate, DeYoung has no first amendment right to appear on television, at least to any extent greater than the limited right of access granted by the equal time provision of the Federal Communications Act. A political candidate does not have a *"constitutional* right of broadcast access to air his [or her] views." *Kennedy for President Comm. v. FCC*, 204 U.S.App.D.C. 145, 636 F.2d 417,

430–31 (1980) (citation omitted; emphasis added). *See Columbia Broadcasting System, Inc. v. Democratic National Comm.,* 412 U.S. 94, 102, 93 S.Ct. 2080, 2086, 36 L.Ed.2d 772 (1973); *Johnson v. FCC,* 264 U.S.App.D.C. 372, 829 F.2d 157, 160–63 (1987) (minor party candidates have no first amendment right to participate in candidates' debate sponsored by League of Women Voters); *Belluso v. Turner Communications Corp.,* 633 F.2d 393, 400–01 (5th Cir.1980) (private broadcaster); *Fulani v. League of Women Voters Education Fund,* 684 F.Supp. at 1192 n. 4; *Christian Populist Party v. Secretary of State,* 650 F.Supp. at 1213. *Cf. Martin–Trigona v. University of New Hampshire,* 685 F.Supp. 23, 24–25 (D.N.H.1988) (state action where state university held political debate, but candidate had no first amendment right to be included).

■ DeYoung's constitutional claim must also fail because a public television station like IPT is not a public forum for purposes of the first amendment. "A facility is a public forum only if it is designed to provide a general public right of access to its use, or if such public access has historically existed and is not incompatible with the facility's primary activity." *Muir v. Alabama Educational Television Comm'n,* 688 F.2d 1033, 1042 (5th Cir.1982) (banc) (majority opinion) (footnote omitted), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). "The pattern of usual activity for public television stations is the statutorily mandated practice of the broadcast licensee exercising sole programming authority," and "[t]he general invitation extended to the public is not to schedule programs, but to watch or decline to watch what is offered." *Id.* at 1042 (footnote omitted). IPT does not allow anyone, even political candidates, to appear on its broadcasts or programs at any time. A public television station like IPT does "provide a forum for some public discourse[, but] the nature and purpose of the forum is not compatible with unrestricted public access, or even with unrestricted access by a particular class of speakers." *Estiverne v. Louisiana State Bar Ass'n,* 863 F.2d 371,

379 (5th Cir.1989) (state bar journal is not a public forum).

## COMMUNICATIONS ACT

■ We next consider DeYoung's statutory claim. DeYoung alleged that defendants violated the equal time provision of the Federal Communications Act, 47 U.S.C. § 315(a), by excluding him from the candidates' debate and the program *Iowa Press.* The district court dismissed this claim for lack of subject matter jurisdiction.

We will assume for purposes of analysis that the candidates' debate was initiated by IPT. Such a debate, if initiated by IPT as a broadcaster, would be subject to the equal time provision.

> [D]ebates between qualified political candidates initiated by *non*broadcast entities (*non-studio* debates) and candidates' press conferences [would] be exempt from the equal time requirements of Section 315, provided they are covered live, based upon the good faith determination of licensees that they are "bona fide news events" worthy of presentation, and provided further that there is no evidence of broadcaster favoritism.

*Chisholm v. FCC,* 176 U.S.App.D.C. 1, 538 F.2d 349, 351 (footnote omitted; emphasis added), *cert. denied,* 429 U.S. 890, 97 S.Ct. 247, 50 L.Ed.2d 173 (1976). Even assuming for purposes of analysis that the candidates' debate and the program *Iowa Press* are subject to the equal time provision, we hold the district court correctly dismissed the complaint because there is no implied private cause of action under the Federal Communications Act for damages for violation of the equal time provision.

Whether Congress intended to create a cause of action is a matter of statutory construction. Because the Federal Communications Act does not expressly provide for a private cause of action and there is no helpful legislative history on this point, we turn to the legislative structure. The Federal Communications Act establishes "a unified and comprehensive regulatory system for the [telecommunications] industry." *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 137, 60 S.Ct. 437, 439, 84

L.Ed. 656 (1940) (footnote omitted). Congress created the FCC and granted it broad regulatory authority, including the authority to prescribe rules and regulations and to enforce compliance through various administrative sanctions. *Belluso v. Turner Communications Corp.*, 633 F.2d at 396. "The focus of the Act is the general public, with the FCC, not the private litigant, as its champion." *Lechtner v. Brownyard*, 679 F.2d 322, 327 (3d Cir.1982). The FCC "has promulgated rules and regulations which provide a candidate aggrieved by a violation of section 315(a) an administrative remedy. In addition to the general complaint procedures, [the FCC] has published specific procedures for political candidates seeking to enforce section § 315(a). [Candidates' complaints] are given priority consideration by [the FCC]." *Belluso v. Turner Communications Corp.*, 633 F.2d at 397 (citations omitted). If the FCC determines that a broadcast licensee has violated § 315(a), the FCC can impose various sanctions, from issuing a cease and desist order against the broadcast licensee, revoking the broadcasting license, denying license renewal, to imposing criminal penalties. *Id.*

We think the administrative enforcement mechanism established by the Act and the broad authority vested in the FCC to regulate broadcasters in general and to enforce the equal time provisions in particular indicate that Congress did not intend to create a private cause of action to enforce the equal time provision. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979). *See Belluso v. Turner Communications Corp.*, 633 F.2d at 395 (private broadcaster; no private cause of action under § 315(a)); *Daly v. Columbia Broadcasting System, Inc.*, 309 F.2d 83, 86 (7th Cir.1962) (private broadcaster; no private cause of action under § 315(a)); *cf. Lechtner v. Brownyard*, 679 F.2d at 326–27 (no private right of action for violation of FCC "personal attack" rule); *Schnapper v. Fo-*

*ley*, 215 U.S.App.D.C. 59, 667 F.2d 102, 116 (1981) (no private right of action under Public Broadcasting and Communications Acts; controversies committed to discretion of FCC), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 661 (1982).

■ The existence of this comprehensive administrative scheme also persuades us that any federal rights that DeYoung has under the equal time provision of the Federal Communications Act are not enforceable under 42 U.S.C. § 1983. "A determination that § 1983 is available to remedy a statutory or constitutional violation involves a two-step inquiry. First, the plaintiff must assert the violation of a federal right." *Golden State Transit Corp. v. City of Los Angeles*, —— U.S. ——, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989) (*Golden State*), citing *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *see also Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). "Second, even when the plaintiff has asserted a federal right, the defendant may show that Congress 'specifically foreclosed a remedy under § 1983' by providing a 'comprehensive enforcement mechanis[m] for protection of a federal right.'" *Golden State*, 110 S.Ct. at 448, citing *Smith v. Robinson*, 468 U.S. 992, 1003, 1005 n. 9, 104 S.Ct. 3457, 3463, 3464, n. 9, 82 L.Ed.2d 746 (1984). "[T]he statutory framework must be such that '[a]llowing a plaintiff' to bring a § 1983 action 'would be inconsistent with Congress' carefully tailored scheme.'" *Golden State*, 110 S.Ct. at 449, citing *Smith v. Robinson*, 468 U.S. at 1012, 104 S.Ct. at 3468. *See also Wright v. City of Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 425–28, 107 S.Ct. 766, 771–73, 93 L.Ed.2d 781 (1987).

Applying the *Golden State* analysis to the present case, we agree that DeYoung did assert the violation of a federal right. The obvious thrust of section 315(a) is to protect bona fide candidates for public office from discrimination and unfair advantage in the use of broadcast facilities. By imposing an affirmative duty on

broadcast licensees to afford equal opportunities to all qualified candidates in the use of broadcast facilities, the [Act] can be read as conferring a federal right in favor of candidates in [DeYoung's] position.

*Belluso v. Turner Communications Corp.,* 633 F.2d at 396. However, the existence of a comprehensive administrative mechanism to enforce candidates' rights to equal time convinces us that a § 1983 remedy for violation of the equal time provision would be inconsistent with the overall legislative scheme. DeYoung is not left without a remedy; he can vindicate his federal statutory right as a political candidate to equal time before the FCC.

IMMUNITY

Because we hold that DeYoung failed to state a claim, we do not reach the issue of immunity. We note, however, that DeYoung sought only monetary damages in his complaint. IPT is a state agency and is protected by the eleventh amendment from liability for monetary damages under 42 U.S.C. § 1983. *See Alabama v. Pugh,* 438 U.S. 781, 781–82, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *Nix v. Norman,* 879 F.2d 429, 432 (8th Cir.1989). In addition, we note that the complaint only stated a claim against White and Patten in their official capacities and was not sufficiently clear to give them notice that they were being sued in their individual capacities as well. Because the complaint did not specify whether Borg was being sued in his official or individual capacity or both, we would be inclined to construe the complaint as stating only an official capacity claim against Borg. Monetary damages are not recoverable against state officials in their official capacities. *Nix v. Norman,* 879 F.2d at 432–33 & n. 3.

In sum, we hold that there was state action. We also hold that political candidates do not have a constitutional right to appear on television, there is no implied private cause of action under the Federal Communications Act to enforce the equal time provision, and the equal time provision is not enforceable under 42 U.S.C. § 1983. Accordingly, we affirm the district court's order dismissing the case. DeYoung's motions for appointment of counsel on appeal and to remand the case to the district court for further proceedings are dismissed as moot.