**Walker CHANDLER, Plaintiff,**

v.

**GEORGIA PUBLIC TELECOMMUNICA-TIONS COMMISSION, et al.,
Defendants.**

**Civ. A. No. 1:90–cv–2040–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 18, 1990.

---

Walker Lawrence Chandler, Office of Walker Lawrence Chandler, Zebulon, Ga., for plaintiff.

Michael E. Hobbs, Office of State Atty. Gen., Nancy M. Gallagher, Office of Georgia Secretary of State, Atlanta, Ga., for defendant.

Mitchell Williams, Atlanta, Ga., pro se.

Carole Ann Rand, Lilburn, Ga., pro se.

## ORDER

SHOOB, District Judge.

Presently before the Court is plaintiff's motion for a temporary restraining order. For the reasons set forth below, the Court will grant plaintiff's motion.

### I. Background

Plaintiff Walker Chandler ("Chandler"), Libertarian candidate for lieutenant governor of Georgia, and intervenor Carole Ann Rand ("Rand"), Libertarian gubernatorial candidate, seek to enjoin Georgia Public Telecommunications Commission ("GPTC") from hosting political debates which exclude them from participation. GPTC plans to hold a pre-election political debate featuring the Democratic and Republican candidates for lieutenant governor on November 2, 1990. A similar debate featuring the gubernatorial candidates for the two parties will be sponsored by the Atlanta Journal & Constitution ("AJ & C"). Both debates will be televised on Georgia Public Television ("GPTV"), GPTC's broadcasting facility, on November 4, 1990. The Libertarian candidates' previous request for inclusion in these debates was denied by GPTC; Chandler and Rand, however, were offered air-time of their own, separate from the debate. *See* Transcript of October 4, 1990, hearing at 5.

The Court held a hearing on plaintiff's motion on October 4, 1990. Plaintiff appeared on his own behalf and on behalf of intervenor Rand; GPTC was represented by the State Attorney General. At the

hearing, the Court granted Rand's motion to intervene, denied a motion to intervene filed by proposed Republican write-in candidate, Mitchell Williams,[1] and denied defendant's motion to dismiss for improper service. On October 17, 1990, at the direction of the Court, plaintiff filed an amended complaint which included as defendants the officers and directors of GPTC. At a final hearing on October 18, 1990, defendants presented testimony concerning GPTC's decision to exclude the Libertarian candidates from the debates.

## II. Discussion

Plaintiff challenges the exclusion of Libertarian candidates as a violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff also alleges that the exclusion of Rand from the gubernatorial debate constitutes an act of sex discrimination on the part of GPTC. Finally, plaintiff contends that GPTC's "free gift" of television time is a special favor in violation of Georgia's Code of Ethics for Members of Commissions, and amounts to commercial programming in violation of GPTC's statutory purpose. *See* O.C.G.A. §§ 45–10–3, 20–13–1(a) (1990 and Supp.1990). Defendant moves to dismiss the action for lack of personal and subject matter jurisdiction and failure to state a claim.

### A. Eleventh Amendment Immunity

■ Defendant argues that the Court lacks personal jurisdiction because GPTC is protected from suit by Eleventh Amendment immunity. There is no dispute that GPTC is an instrumentality of the state, created by statute and funded, in part, by the Georgia legislature. *See* O.C.G.A. § 20–13–1 to –12 (Supp.1990). Defendant argues that it is protected from monetary and injunctive relief by Eleventh Amendment immunity which has not been waived. *See Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518 (11th Cir.1983). While a state agency is protected from suit by Eleventh Amendment immunity, a plaintiff may seek to enjoin unconstitutional state action by naming the responsible state officers in his complaint. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), *Gamble v. Florida Department of Health and Rehabilitative Services*, 779 F.2d 1509, 1511 (11th Cir. 1986).

Plaintiff filed an amended complaint with the Court on October 17, 1990. Plaintiff's amended complaint now properly includes as defendants the officers and directors of GPTC.[2] Accordingly, the Court will dismiss the action against GPTC on Eleventh Amendment grounds.

### B. FCC's Primary Jurisdiction

■ Defendants insist that the Court lacks subject matter jurisdiction over this action because plaintiff's exclusive remedy is to proceed before the Federal Communications Commission ("FCC"). Because the FCC typically handles claims against broadcasters, defendants argue that plaintiff should proceed against GPTC before the FCC to enforce the equal time provision of the Federal Communications Act. *See* 47 U.S.C. § 315.[3]

Plaintiff is not attacking GPTC as a broadcaster, however, nor is he seeking equal time pursuant to Section 315.[4] Rather, plaintiff challenges defendants in their capacities as state officials for alleged constitutional violations. It would be unreasonable to require plaintiff to seek redress for constitutional violations with the FCC simply because GPTC is a broadcaster and the FCC regulates *some* aspects of GPTC's

---

**1.** On October 12, 1990, the Court also issued a written order on Williams' motion to intervene.

**2.** Plaintiff served all defendants by depositing the amended complaint in the U.S. Mail on October 17, 1990.

**3.** Section 315 provides in pertinent part:
(a) If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station.

**4.** In fact, plaintiff and intervenor previously were offered equal air-time yet contend that it is worthless compared to the exposure provided by the televised debates. *See* Transcript at 6.

operation. The FCC has no special expertise in handling constitutional claims of this kind, nor is there a suitable administrative remedy available. In addition, there is no question that plaintiff has not attempted to bring a private right of action under Section 315. *Cf. Belluso v. Turner Communications Corp.*, 633 F.2d 393 (5th Cir. 1980). Therefore, the Court finds the action is properly before the Court and will deny defendant's motion to dismiss for lack of subject matter jurisdiction.

### C. Special Favors, Commercial Programming, Sex Discrimination

■ Plaintiff alleges that GPTC's "gift" of free television time constitutes a special favor in violation of the Code of Ethics ("the Code") governing commissions. *See* O.C.G.A. § 45–10–3 (1990). At the October 4, 1990, hearing, the Court indicated that GPTC's actions relating to the debates did not appear to constitute special favors within the meaning of the Code. *See* Transcript at 6. Plaintiff has submitted no evidence or argument that changes the Court's opinion on this matter. GPTC's choice of the participants in the debates was not an effort to bestow a benefit on the majority party candidates, but represented a decision concerning the popularity of the views and candidacies of the Libertarian representatives. As discussed below, GPTC's decision to exclude the Libertarian candidates is violative of plaintiff's constitutional rights. It is not, however, a violation of the Code or grounds for a private right of action under the Code.

■ Equally unconvincing is plaintiff's argument that GPTC's televising of the debates amounts to commercial programming in violation of its statutory purpose. *See* O.C.G.A. § 20–13–8(a)(2) (Supp.1990). There is no indication that the debates are a profitable endeavor for GPTC, nor does AJ & C's involvement render the events commercial in nature. Finally, plaintiff's contention that Rand was excluded because she is a female is inconsistent with his argument that he and Rand were excluded based on the content of their speech. The Court finds meritless plaintiff's argument that the exclusion of Rand constituted sex discrimination.

### D. First Amendment

■ Plaintiff alleges that defendants' refusal to allow Libertarian participation in the upcoming debates is violative of the First Amendment rights of freedom of speech and access. Defendants argue there is no First Amendment right of access to the broadcast media and, therefore, plaintiff's action should be dismissed for failure to state a claim. Defendants insist that GPTC is not a public forum for First Amendment purposes.

■ The type of restrictions which may be placed on First Amendment activities depends in large part on "the nature of the relevant forum." *Cornelius v. NAACP Legal Defense Fund*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). In a traditional public forum and a "created" public forum, speakers can be excluded only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. *Id.; Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). The government is afforded considerably more latitude in a nonpublic forum: "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806, 105 S.Ct. at 3451. In other words, the government may not deny access to a speaker "solely to suppress the point of view he espouses on an otherwise includable subject." *Id.* Unlike in most First Amendment cases, the Court in this instance need not determine the nature of the forum at issue because defendants have failed to even articulate a reasonable basis for excluding ballot-qualified Libertarian candidates from a nonpublic forum.

The stated reason for the exclusion of plaintiff and intervenor from the debates by GPTC is that:

"Were its air waves open for unrestricted access to all citizens, the GPTC would be unable to operate within the guidelines set by Congress through enactment of the Federal Communications Act.... GPTC clearly has as its legitimate purpose the dissemination of newsworthy information in a format it judges to be responsive to the demands of the public. The citizens of Georgia will, in large measure, vote for either the Democratic or Republican candidates in the upcoming elections."

Defendant's Reply Brief at 5. At the October 18, 1990, hearing, Dick Ottinger ("Ottinger"), Executive Director of GPTC, stated that he and the other officers of GPTC decided to include only the two "frontrunners" in each debate because the information presented by the majority candidates was of greater interest to the public and, therefore, more newsworthy.

■ Although the state's basis for its decision to restrict access to a nonpublic forum need not be the most reasonable or only reasonable basis, *Cornelius*, 473 U.S. at 808, 105 S.Ct. at 3452, "[t]he existence of reasonable grounds for limiting access to a nonpublic forum will not save a regulation that is in reality a facade for viewpoint based discrimination." *Searcey v. Crim*,

888 F.2d 1314, 1324 (11th Cir.1989), *citing Cornelius*, 473 U.S. at 811, 105 S.Ct. at 3453.[5] The basis articulated by defendants is not even an attempt to mask their content-based motivations.

The Libertarian platform admittedly represents a minority point of view in Georgia and is less popular than that of the traditional parties. However, to exclude a ballot-qualified candidate from debates hosted by GPTC because the candidates' views are of less interest to the public or less newsworthy [6] is viewpoint based discrimination in violation of the First Amendment.[7] *See Kelley v. WMUL–TV*, 7 Med.L.Rptr. 1094, 1095 (S.D.Va.1980). A decision on the popularity of a particular candidate necessarily includes a judgment regarding the content of the political speech. An agency of the state cannot make a unilateral decision concerning the content of the views of a minority candidate, even in a nonpublic forum. The Court finds defendants' decision to exclude plaintiff and intervenor a constitutionally impermissible prior restraint based upon content.

The Court is not suggesting that defendants are required to include the entire citizenry of Georgia as possible participants in the debates. Rather, plaintiff argues that as ballot-qualified candidates [8]

5. While GPTC relies on *Searcey* to support its assertion that the content based restriction is reasonable in light of the purpose of the forum, it fails to address other portions of *Searcey* which clearly state that the government may not manufacture a basis for its restriction in an effort to conceal its attempt to distinguish between particular speakers based on their views. 888 F.2d at 1324.

6. GPTC insists that it made a decision on the newsworthiness of the debates at issue in accordance with the statutory purposes of the forum. GPTC is "created, designed, and intended for the purpose of providing educational, instructional, and public broadcasting services to the citizens of the State of Georgia." O.C.G.A. § 20–13–5(a) (Supp.1990). The broadcasting services provided by GPTC have traditionally presented educational and instruction programming of the type that is often neither newsworthy nor popular. However, GPTC presents its argument as if its primary objective is to offer programming, similar to that offered by commercial broadcasters, that is preferred by the majority of the public. The Court finds that GPTC's position conflicts with the actualities of

its operations. Additionally, GPTC has not merely decided to "cover" newsworthy events, it has actually created the debates at issue.

7. Defendants and AJ & C in its amicus curiae brief argue that GPTC's airing of the debates merely amounts to coverage of a news event which is of interest to the citizens of Georgia. Regardless of how GPTC's participation is described, it remains an agency of the state which through its officers and directors has decided to prohibit ballot-qualified candidates from taking part in political debates that will be presented to the public by GPTV. AJ & C's participation does not make the decision regarding the gubernatorial debate any less of a content-based restraint on speech.

8. Chandler and Rand marshalled considerable support to become "ballot-qualified." They submitted a nomination petition "signed by a number of voters equal to 1 percent of the total number of registered voters eligible to vote in the last election for the filling of the office the candidate is seeking." O.C.G.A. 21–2–170(b) (Supp.1990). Chandler and Rand also paid a substantial qualifying fee.

for the Libertarian party, he and intervenor should be permitted to participate in debates which include the other ballot-qualified candidates. The proposed ballots in the two races will include only the Republican candidates, the Democratic candidates, *and* the Libertarian candidates. Inclusion of one more ballot-qualified candidate in each of the debates will not impede GPTC's ability to operate within the Federal Communications Act. Moreover, Ottinger testified that the only problem with including a third candidate in each debate is that it would diminish the time available for each candidate to present his or her views. However, Ottinger also stated there would be no problem with extending the one hour format by one half-hour to accommodate the additional participants.[9]

The Court finds that it is not reasonable to exclude these candidates from the debates in light of the circumstances and of the purpose to be served by the forum. There would be little if any disruption to the forum if plaintiff and intervenor are included in the upcoming debates. Additionally, the effectiveness of the debates, rather than the effectiveness of the individual presentations by the candidates, will not be hindered. *See Cornelius,* 473 U.S. at 811, 105 S.Ct. at 3453 (First Amendment does not forbid a viewpoint-neutral exclusion of speakers who *would* disrupt a nonpublic forum and *would* hinder its effectiveness for its intended purpose).

The Court's decision does *not* go so far as to find a right of access to the broadcast media. *See DeYoung v. Patten,* 898 F.2d 628 (8th Cir.1990) (no constitutional right of access to state broadcast facility). Rather, the Court holds that the government cannot restrict access to a public or nonpublic forum to suppress an otherwise includable viewpoint. *Cornelius,* 473 U.S. at 808, 105 S.Ct. at 3452. Plaintiff and intervenor have been excluded from the upcoming debates because defendants believe they may exercise unbridled discretion in choosing participants in a political discourse among ballot-qualified candidates. The First

Amendment protects the Libertarian candidates from such unreasonable restriction on speech.

### E. Equal Protection

■ Plaintiff also alleges that defendants' decision to exclude them from the debates violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiff and intervenor are not a protected class for equal protection purposes; therefore, the Court must examine defendants' actions under the "minimal scrutiny" standard giving deference to state objectives. However, the state must exhibit "some rationality in the nature of the class singled out." *Rinaldi v. Yeager,* 384 U.S. 305, 308–09, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966).

Chandler is similarly situated with the Republican and Democratic candidates for Lieutenant Governor. Likewise, Rand is similarly situated with the Republican and Democratic gubernatorial candidates. All are "ballot-qualified," meaning, theirs are the only names that will appear on the ballots for these two state-wide offices. The Court cannot find, and defendants have not offered, any legitimate public purpose or rational purpose for excluding the third-party candidates. Certainly the fact that the Libertarian candidates are less popular than the majority parties' candidates is not a rational basis for the exclusion. For many of the same reasons that defendants' actions violate the First Amendment, the Court finds a violation of the Equal Protection clause of the Fourteenth Amendment.

### III. Conclusion

■ To prevail on his motion for a temporary restraining order, plaintiff must establish four factors:

a. a substantial likelihood that plaintiff will prevail on the merits;

---

9. GPTC's failure to consider such a minor change or alternative format supports the finding that the restriction is unreasonable and bol-

sters the Court's conclusion that the exclusion is viewpoint based. *See Searcey,* 888 F.2d at 1321–22.

b.   a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

c.   that the threatened harm to plaintiff outweighs the possible harm to defendants should they be enjoined;  and

d.   that the grant of an injunction will not disserve the public interest.

*United States v. Alabama,* 791 F.2d 1450, 1459 n. 10 (11th Cir.1986), *cert. den.* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987).   Plaintiff and intervenor will suffer irreparable injury if they are excluded from the debates, they will lose the opportunity to participate with other ballot-qualified candidates, and the harm will greatly outweigh any harm to defendants if the injunction is issued.   Also, plaintiff will quite probably succeed on the merits of his constitutional claims.   Most important, the public's interest will be best served by vindicating the constitutional rights of plaintiff and intervenor.

Accordingly, the Court GRANTS plaintiff's motion for a temporary restraining order and ENJOINS defendants from televising the debate between the candidates for lieutenant governor scheduled for November 2, 1990, and the gubernatorial debate scheduled for November 4, 1990, unless they include the ballot-qualified Libertarian candidates as participants.

IT IS SO ORDERED.