**Ralph P. FORBES, and the People, Appellant,**

v.

**ARKANSAS EDUCATIONAL TELEVISION COMMUNICATION NETWORK FOUNDATION, and its Board of Directors in their official capacities; Arkansas Education Telecommunications, and its members and officers; Susan J.**

Howarth, in her official capacity as Executive Director; Victor Fleming, in his official capacity as Chairman; G.E. Campbell, in his official capacity as Vice–Chairman; Dr. Caroline Whitson, in her official capacity as Secretary; Diane Blair, in her official capacity as Commissioner; S. McAdams, in his official capacity as Commissioner; James Ross, in his official capacity as Commissioner; Jerry McIntosh, in his official capacity as Commissioner; Lillian Springer, in her official capacity as Commissioner; Amy L. Oliver, in her official capacity as Production Manager; Bill Clinton, in his official capacity as Governor of the State of Arkansas; and John Does; KHBS TV/Channel 40 UHF; KHOG TV/Channel 29 UHF; American Broadcasting Company; Darrel Cunningham, in his individual capacity, Appellees.

No. 93–1031.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 31, 1993.

Decided April 28, 1994.

Rehearings Denied June 21, 1994.

Appellant appeared pro se in the above appeal.

Thomas S. Gay, Little Rock, AR, argued (Winston Bryan and Thomas S. Gay, on the brief, of appellees Arkansas Educational Television Network, et al.). (Robert L. Jones, III and Charles R. Garner, Jr. of Fort Smith, AR, on the brief of KHBS–TV, KHOG–TV and Darrell Cunningham).

James P. Mercurio, Theodore D. Frank, Marilyn D. Sonn and Kathleen L. Franco of Washington, DC, appear on the brief of amici curiae Asso. of America's Public Television Stations, National Public Radio, Organization of State Broadcasting Executives and Public Broadcasting Service.

Renee Licht, Daniel M. Armstrong and C. Grey Pash, Jr. of Washington, DC, on the brief of amicus curiae for Federal Communications Comm'n.

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

The petitioner, Ralph Forbes, appeals the District Court's dismissal of his complaint for failure to state a claim upon which relief can be granted. Forbes raises two issues. First, does a private television station violate the Federal Communications Act by deciding to air a political advertisement during "safe

harbor" hours without first determining whether that ad is "indecent"? Second, does a political candidate who has qualified to be on the ballot have a right to be included in a debate sponsored by a public television station or, in the alternative, a right to equal access under 47 U.S.C. § 315,[1] when the other candidates are included? Relying on this Court's holding in *DeYoung v. Patten,* 898 F.2d 628 (8th Cir.1990), the District Court concluded that neither claim had merit, that the Communications Act cannot be enforced through a § 1983 action, and that Forbes had failed to state a claim under 42 U.S.C. § 1981, § 1985, or the First and Fourteenth Amendments. We now affirm in part and reverse in part.

## I.

In 1992, Ralph Forbes was an independent candidate for United States Representative for the Third Congressional District of Arkansas. He had obtained enough signatures to qualify for the ballot under state law. One of the defendants, the Arkansas Educational Television Network (AETN), is an instrumentality of the State of Arkansas. The other defendants are private television stations that broadcast in the Third Congressional District.

A few weeks before the general election on November 3, 1992, Forbes sued AETN and its agents (collectively the AETN defendants) alleging that AETN planned to sponsor a debate among the candidates for the Third Congressional District seat, but that it intended to include only the two major-party candidates. Forbes alleged that since he had qualified for the ballot as an independent candidate, he had a right to be included in the debate or, in the alternative, a right to additional air time on AETN to express his views, as required by the equal-time provision of 47 U.S.C. § 315. He claimed that

AETN had denied him access to air time because of his political beliefs. Forbes also alleged that AETN's actions were taken in violation of 42 U.S.C. § 1981 *et seq.*, and that his First Amendment rights had been violated. Finally, Forbes alleged that his exclusion from the debates had deprived "the people" of their right to vote, and he sought declaratory and injunctive relief as well as compensatory and punitive damages.

Forbes alleged that he asked AETN to include him in the debate or give him additional time, and that his request was refused. He then telephoned the Federal Communications Commission and claimed that an FCC representative told him to "go through the motions" of a proper complaint, although it would be a waste of time. Believing that pursuit of his claim through the FCC would be pointless, Forbes wrote the FCC to request that his complaint be denied speedily so that he could seek an injunction in court. Instead, the FCC responded with a letter enclosing a statement of applicable law as well as instructions on how to file a complaint with the FCC. Forbes claims that he never received the enclosed materials, although he acknowledges receipt of the letter.

Forbes then sought injunctive relief in the District Court and moved for a preliminary injunction to mandate his inclusion in the debate. He alleged that AETN's reasons for excluding him from the debate were discriminatory and were specifically designed to keep the public from learning of Forbes's views on certain policy issues. In support of this position, Forbes claimed that an official of AETN stated that the network would run "St. Elsewhere" rather than a debate that included Forbes, and that another official of AETN stated that Forbes had not been included because he was not a "serious" candidate.

The District Court denied the request for injunctive relief on October 20, 1992. On

1. 47 U.S.C. § 315(a) provides that any person legally qualified as a candidate for public office shall be afforded the same opportunities as all other candidates for that office. However,

> No obligation is imposed under this subsection upon any licensee to allow the use of its station by any such candidate. Appearance by a legally qualified candidate on any—
> (1) bona fide newscast,

> (2) bona fide news interview,
> (3) bona fide news documentary ... or
> (4) on-the-spot coverage of bona fide news events ...
> shall not be deemed to be use of a broadcasting station within the meaning of this subsection.

47 U.S.C. § 315(a).

October 21, 1992, sitting as a single circuit judge, the writer of this opinion denied Forbes's request for an injunction pending appeal. The next day, a panel of this Court declined to disturb that action. The basis for both rulings—that of the panel and that of the single judge—was that *DeYoung v. Patten, supra*, was controlling Circuit precedent and directly in point against Forbes.

On November 2, one day before the election, Forbes amended his complaint to include private television stations KHBS–TV and KHOG–TV, the American Broadcasting Company, and their agent, Darrel Cunningham (collectively "the private stations"), as defendants. In his amended complaint, Forbes alleged that the private stations had violated the provisions of the Communications Act by refusing to air one of his anti-abortion advertisements except during the "safe-harbor" hours of 11:00 p.m. to 6:00 a.m. without first making a determination that the ad was indecent. Forbes alleged a criminal conspiracy, "RICO treble damages," and violations of 42 U.S.C. § 1981 *et seq.*, and claimed the private stations' actions also were in violation of 47 U.S.C. § 315. He renewed his claims against the AETN defendants.

The AETN defendants filed a Rule 12(b)(6) motion, arguing that Forbes had no First or Fourteenth Amendment right to appear in a television debate, that he had no personal claim or cause of action under 47 U.S.C. § 315 to appear on television, that he failed to state a claim under 42 U.S.C. § 1981, and that he failed to state a cause of action against the AETN defendants. The private stations also moved for dismissal under Rule 12(b)(6), arguing that the District Court had no subject-matter jurisdiction under the Communications Act, and that Forbes had failed to exhaust his administrative remedies. The District Court, after properly setting forth the standard for granting a Rule 12(b)(6) motion, concluded that the standard had been met by both sets of defendants. It concluded, following this Court's holding in *DeYoung v. Patten, supra*, that Forbes had no right of access to the public airways, that no implied right of action exists under the Communications Act, and

that § 1983 cannot be used to enforce the rights granted by 47 U.S.C. § 315. Additionally, the Court concluded that the complaint contained only vague allegations of conspiracy that failed to state a claim under 42 U.S.C. § 1985.

## II.

In reviewing a dismissal for failure to state a claim, we take the allegations well pleaded in the complaint as true. Motions to dismiss should not be granted unless it is clear beyond doubt that there is no set of facts the plaintiff could prove that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Forbes has raised three claims in his complaint. First, as against both the AETN defendants and the private stations, Forbes has claimed violations of 47 U.S.C. § 315 and a conspiracy under 42 U.S.C. § 1985. Second, Forbes has additionally claimed against AETN a § 1983 violation for failing to provide him with equal time as required by § 315. Finally, Forbes has alleged that AETN violated the First and Fourteenth Amendments by failing to include him in the debate.

### A. Statutory Claims

First, with respect to Forbes's statutory claim, we agree with the District Court and the private stations that Forbes's complaint cannot stand. There is no private cause of action to enforce 47 U.S.C. § 315, and Forbes's proper course of action is to bring his claim before the Federal Communications Commission. Forbes failed to exhaust his administrative remedies; therefore, his claim that the private stations improperly refused to run his anti-abortion advertisement outside of safe-harbor hours was not properly before the District Court. Additionally, Forbes's claim that AETN improperly refused to grant him equal time, as required by § 315, likewise should have been brought before the FCC first and then appealed, if necessary, to a court of competent jurisdiction. See *DeYoung*, 898 F.2d at 633–35. (We adhere to this aspect of *DeYoung*.) Since Forbes has failed to exhaust his administrative remedies, the District Court was

correct in declining to rule on his statutory claims.

■ We further agree with the District Court that there is insufficient substance to Forbes's conspiracy claim to entitle him to relief under 42 U.S.C. § 1985. We also affirm the District Court's ruling that the failure to allege racial discrimination bars his claim under § 1981. Finally, we agree with the District Court that § 1983 is not available to enforce Forbes's claims under § 315 of the Communications Act, since that provision itself contains the remedy for its violation—a petition to the FCC. Nonetheless, we disagree with the District Court with regard to Forbes's constitutional claims, and now hold that Forbes did allege a First Amendment violation well enough to survive a motion to dismiss. We now turn to this claim.

### B. First Amendment Claim

The District Court dismissed Forbes's First Amendment claim on the authority of this Court's holding in *DeYoung*, 898 F.2d at 632, that "[a] political candidate does not have a 'constitutional right of broadcast access to air his views.'" *Id.* at 632, quoting *Kennedy for President Comm. v. FCC*, 636 F.2d 417, 430–31 (D.C.Cir.1980). The Court concluded that the only claim Forbes had to warrant his inclusion in the debate was under the equal-time provision of the Communications Act. Since there was no private right of action under the Communications Act, nor was § 1983 available to enforce its provisions, Forbes's only remedy was through the FCC. Letter from the District Court to All

Counsel of Record at 4, citing *DeYoung*, 898 F.2d at 634.

■ Generally speaking, it is true that a candidate does not have the right to demand air time. See *Kennedy for President Comm., supra.*[2] Under the circumstances of the present case, we hold that Forbes did have a qualified right of access created by AETN's sponsorship of a debate, and that AETN must have a legitimate reason to exclude him strong enough to survive First Amendment scrutiny. In *DeYoung*, this Court concluded that a public television station, such as AETN, was a state actor. *DeYoung*, 898 F.2d at 631–32. We adhere to this conclusion. AETN is not a private entity; it is a state-owned television network; therefore, actions taken by the station, as well as actions taken by its employees and representatives, are fairly attributable to the State and subject to the Fourteenth Amendment, unlike the actions of privately owned broadcast licensees.

■ As a state actor, AETN is faced with constraints not shared by other television stations. When it comes to the First Amendment claim, we conclude that *DeYoung* was wrongly decided. *DeYoung* holds that no First Amendment right to appear in a televised debate exists, at least beyond that given by § 315, *DeYoung*, 898 F.2d at 633–35, and that the only remedy available to a candidate in Mr. Forbes's position is to seek remedial action through the FCC. This holding would allow a state-owned station to exclude all Republicans, or all Methodists, or all candidates with a certain point of view, except to the extent, if any,[3] that the excluded candidates could obtain relief under the

2. In *Kennedy*, the FCC had denied a candidate's request for an opportunity to respond to the President's statements in a press conference. Since the press conference was a bona fide news event, and, therefore, the equal-time provision of the Communications Act was not triggered, the candidate argued that he had a First Amendment right to respond. The Court concluded that since there was no absolute right of access to the airwaves, the provisions of § 315 excluding bona fide news events from its requirements was not in violation of the First Amendment. *Kennedy*, 636 F.2d at 432. As a general rule, we agree with this principle—there is no First Amendment right to appear on television upon demand. However, the stations involved in *Kennedy* were

private stations. See *Id.* at 419–20. In the present case, the fact that AETN is a public station and did, Forbes alleges, sponsor its own debate alters the analysis significantly.

3. Regardless of the sponsor, the FCC has allowed non-inclusive debates to be broadcast over public stations. See *In re Sagan*, 1 FCC Rcd 10 (1986). The deference we give administrative agencies on questions of statutory interpretation does not extend to constitutional issues. See *Chandler v. Georgia Public Telecommunications Comm'n*, 917 F.2d 486, 492 n. 4 (1990) (Clark, J., dissenting), *cert. denied*, —— U.S. ——, 112 S.Ct. 71, 116 L.Ed.2d 45 (1991).

Communications Act. We believe the error of such a proposition is self-evident. The state may not, by statute or otherwise, take such a discriminatory action, absent a compelling state interest.

The AETN defendants suggest that the case should be governed by public-forum analysis. If it is, the same conclusion follows: a state agency does not have an absolute right to determine which of the legally qualified candidates for a public office it will put on the air. The reason for such an exclusion must be ascertained and measured against First Amendment standards.

■■■ In its discussions of public versus nonpublic fora, the Supreme Court has divided government property into roughly three categories. The first is the traditional public forum, such as the town square, "which by long tradition or by government fiat ha[s] been devoted to assembly and debate." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). Public television stations do not fit into this category—there is no unlimited right of access to the airwaves. The second category is the limited public forum, a place that generally is not open for public expression, but that the government has opened for use for free speech for only a limited period of time, *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 655, 101 S.Ct. 2559, 2567, 69 L.Ed.2d 298 (1981), a limited topic, or a limited class of speakers. See *Widmar v. Vincent*, 454 U.S. 263, 267, 102 S.Ct. 269, 273, 70 L.Ed.2d 440 (1981). Since the key determination of whether a forum is a limited public one is the government's acquiescence in its use for expressive purposes, it is certainly possible that AETN created a limited public forum when it chose to sponsor a debate among the candidates for the Third Congressional seat. This is a determination the factfinder would have to make after care-

fully looking at the nature of the debate forum. If it were determined that AETN had created a limited public forum, then Forbes would have a First Amendment right to participate in the debate and could be excluded only if AETN had a sufficient government interest. *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); *Perry*, 460 U.S. at 45, 103 S.Ct. at 954.

■■■ The third category of governmental property is the nonpublic forum, which consists of property not usually compatible with expressive activity. See *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Even in the context of the nonpublic forum certain minimum First Amendment requirements apply:

> Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral. Although a speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum, or if he is not a member of the class of speakers for whose especial benefit the forum was created, the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.

*Id.* at 806, 105 S.Ct. at 3451 (citations omitted). Since Forbes was a member of the class of speakers for whose benefit the debate was held (candidates for the Third Congressional seat), and he wished to address the topic encompassed by the debate (who should be elected to Congress), if AETN failed to include Forbes because of objections to his viewpoint, it has violated his First Amendment rights.[4] See *Gay & Lesbian*

---

4. AETN and the Public Broadcasting System amici cite other circuits which they say have concluded otherwise. Most significantly, they cite *Johnson v. FCC*, 829 F.2d 157 (D.C.Cir.1987); *Chandler v. Georgia Public Telecommunications Comm'n*, 917 F.2d 486 (11th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 71, 116 L.Ed.2d 45 (1991); and *Muir v. Alabama Educational Televi-*

*sion Commission*, 688 F.2d 1033 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). These cases do not precisely address the case before us. *Chandler* involved a factual situation similar to that in the case at bar; however, the Georgia Public Telecommunications Commission had offered the candidates there thirty minutes of air time to respond to the

*Students Ass'n v. Gohn,* 850 F.2d 361 (8th Cir.1988) (while there is no First Amendment right to receipt of public school funds, a state school is not permitted to refuse funding because it disagrees with an organization's message). It should be noted that the Public Television Station amici acknowledge that AETN does not have the right to exclude Forbes simply because they disagree with his point of view. Certainly, were the answer otherwise, there would be nothing to prevent the party in power from excluding all opposing parties, or particular religions, or minorities from public-television-sponsored debates.

## III.

AETN has not filed an answer to Forbes's complaint; therefore, it has not yet articulated any principled reason for excluding Forbes. See *Cornelius,* 473 U.S. at 811, 105 S.Ct. at 3453 ("existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination"). AETN must provide a rational and viewpoint-neutral justification for its determination. On this record, AETN has not yet done so; therefore, Forbes has stated a claim upon which relief can be granted, especially if we credit Forbes's allegation, as we must in reviewing a Rule 12(b)(6) dismissal, that AETN planned to air "St. Elsewhere" rather than allow Forbes to debate.

So much of the judgment as dismissed Forbes's statutory claims is affirmed. So much of the judgment as dismissed his claim under the First and Fourteenth Amendment for failure to state a claim is reversed, and the cause is remanded for further proceedings consistent with this opinion. That portion of *DeYoung v. Patten* which holds that the First Amendment places no restraint, beyond that imposed by the Communications Act, on the right of state agencies to sponsor candidate debates and pick and choose which candidates may take part, is overruled.[5]

It is so ordered.

McMILLIAN, Circuit Judge, joined by JOHN R. GIBSON, Senior Circuit Judge, FAGG, MAGILL, and HANSEN, Circuit Judges, concurring in part and dissenting in part.

Although I agree with most of the majority opinion, for the reasons discussed below, I would affirm the order of the district court dismissing Forbes's complaint. Accordingly, I concur in part and dissent in part.

It has been an instructive experience to reconsider these issues. As a preliminary matter, however, I would hold that the FCC has exclusive jurisdiction of this litigation, including both the statutory and the constitutional claims, with judicial review in the court of appeals and then the Supreme Court. *See Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 77 (D.C.Cir. 1984); *see also Columbia Broadcasting System, Inc. v. Democratic National Comm.,* 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Forbes should have taken his complaints to the FCC in the first instance. Litigation in the district court is inconsistent with and necessarily undermines the exclusive jurisdiction of the FCC.

Balancing the various First Amendment interests involved in the broadcast media and determining what best serves the public's right to be informed is a task of great

---

debate from which they were excluded, something AETN allegedly refused to do for Forbes. Additionally, we respectfully disagree with the Eleventh Circuit's conclusion that the First Amendment was not implicated by the Georgia public television station's actions. See *Chandler,* 917 F.2d at 490–94 (Clark, J., dissenting). *Muir* did not involve a debate at all, but rather an attempt by Alabama and Texas public television viewers to force their public television stations to air a particular show. *Muir* correctly assesses the right of the public to have access to air time, but does not address the situation facing us here. *Johnson* involved a broadcast debate sponsored by a third party, not by a public television station.

**5.** Our holding applies only to debates that are sponsored by state instrumentalities. It does not apply to private-television-sponsored debates, nor to debates sponsored by third parties that are reported in good faith by public television stations.

delicacy and difficulty. The process must necessarily be undertaken within the framework of the regulatory scheme that has evolved [since 1927]. . . .

. . . The judgment of the Legislative Branch cannot be ignored or undervalued simply because [Forbes has cast his] claims under the umbrella of the First Amendment. That is not to say that we "defer" to the judgment of the Congress and the [Federal Communications] Commission on a constitutional question, or that we would hesitate to invoke the Constitution should we determine that the Commission has not fulfilled its task with appropriate sensitivity to the interests in free expression.

*Columbia Broadcasting System, Inc. v. Democratic National Comm.*, 412 U.S. at 102–03, 93 S.Ct. at 2086–87.

It may be true that the FCC is not as vigilant or as sensitive to first amendment interests as it should be. *See Muir v. Alabama Educational Television Comm'n*, 688 F.2d 1033, 1056–57 (5th Cir.1982) (banc) (Frank M. Johnson, Jr., J., dissenting), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). It may also be true that technological changes since the Supreme Court decided *Red Lion Broadcasting Co. v. FCC* in 1969 have largely undermined the basis for the existing pervasive federal regulation of the broadcasting industry as a whole and, as a result, "raise a significant possibility that the First Amendment balance struck in *Red Lion* would look different today." *See Arkansas AFL–CIO v. FCC*, 11 F.3d 1430, 1442 (8th Cir.1993) (banc) (Richard S. Arnold, C.J., concurring in the judgment). However, absent such developments, I would require Forbes to raise both his statutory and constitutional claims in proceedings before the FCC and not as an original matter in the district court.

Assuming the district court did have jurisdiction, I agree the district court correctly dismissed Forbes's 42 U.S.C. § 1985 civil conspiracy claim because his allegations were too vague and his 42 U.S.C. § 1981 claim because he failed to allege discrimination on the basis of race. Op. at 1428. I also agree the district court correctly dismissed Forbes's Federal Communications Act claims against the AETN defendants for excluding him from the debate and for refusing him air time and against the private stations for refusing to broadcast his political advertisements except during the safe-harbor hours. *Id.* at 1427. The district court lacked subject matter jurisdiction over these claims. Forbes should have taken these complaints to the FCC first. Forbes did not do so. The FCC has considered complaints involving candidate debates as well as complaints involving anti-abortion advertisements. Then, had the FCC ruled against him, Forbes could have sought judicial review in the court of appeals, not the district court. *DeYoung v. Patten*, 898 F.2d 628, 633–34 (8th Cir.1990) (no implied private right of action). I also agree that Forbes cannot use 42 U.S.C. § 1983 to enforce these statutory claims. Op. at 1428; *DeYoung v. Patten*, 898 F.2d at 634–35 (§ 1983 remedy foreclosed by comprehensive enforcement mechanism).

With respect to Forbes's first amendment claim, I also agree that there is state action for purposes of § 1983 because AETN is an instrumentality of the state. It is a state-owned, noncommercial, public television station; its employees are state employees who are represented in this appeal by the state attorney general. Op. at 1428; *DeYoung v. Patten*, 898 F.2d at 631–32. I do not agree, however, that Forbes, even though he was a legally qualified candidate, had a first amendment right to be included in the candidate debate or that the candidate debate was a public forum for first amendment purposes. In my view, the candidate debate was a nonpublic forum. Like private commercial television, public television is not a traditional public forum; it does not extend a general invitation to the public to appear on or participate in its programs. Nor do I think the candidate debate was a limited or quasi-public forum; the format of this candidate debate was not compatible with either unrestricted public access or with unrestricted

access by all of the legally qualified candidates. For this reason, I would hold that the candidate debate was a nonpublic forum.

"Control over access to a nonpublic forum can be based on ... speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Defense & Education Fund,* 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985) (citations omitted). Presumably, AETN decided to limit the number of candidates in order to maintain a traditional debate format, rather than to expand the format to a panel discussion. Because AETN has yet to file an answer, AETN's reasons for designing the format of the candidate debate as it did are not known. However, it would not have been unreasonable or viewpoint-specific for AETN to have limited the candidate debate to only the two major party candidates, thus excluding minor party candidates and independent candidates, or, for that matter, to the two candidates who had the most support or who appeared to have the most likely chance of winning, for example, on the basis of poll results. It may not have been good programming, or even good politics, given voters' interest in and the occasional historical success of minor party and independent (and even fringe) candidates, to limit the candidate debate to the two major party candidates. Nonetheless, I would hold that AETN had the editorial and programming discretion to structure the candidate debate along those lines and that excluding Forbes from the candidate debate for those reasons would be viewpoint neutral.