# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-1825

_____

| | | |
|---|---|---|
| Christopher B. Alsbrook, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Intervenor on Appeal, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Maumelle, Arkansas; | * | |
| | * | |
| Defendant. | * | |
| | * | |
| Arkansas Commission on Law | * | |
| Enforcement Standards and Training; | * | Appeal from the United States |
| State of Arkansas; W.C. Brassell, also | * | District Court for the |
| known as Dub Brassell, Individually and | * | Eastern District of Arkansas |
| in his capacity as Chairman of the | * | |
| Arkansas Commission on Law | * | |
| Enforcement Standards & Training; | * | |
| Bobby Hilderbrand, Individually and | * | |
| in his official capacity as a member of | * | |
| the Arkansas Commission on Law | * | |
| Enforcement Standards & Training; | * | |
| Willard, Individually and in his | * | |
| official capacity as a member of the | * | |
| Arkansas Commission on Law | * | |
| Enforcement Standards & Training; | * | |
| Elanor Anthony, Individually and in her | * | |
| official capacity as a member of the | * | |

Arkansas Commission on Law     *
Enforcement Standards & Training;     *
Bob Johnston, Individually and in his     *
official capacity as a member of the     *
Arkansas Commission on Law     *
Enforcement Standards & Training;     *
David Muniz, Individually and in his     *
official capacity as a member of the     *
Arkansas Commission on Law     *
Enforcement Standards & Training;     *
Gary Ashcroft, Individually and in his     *
official capacity as a member of the     *
Arkansas Commission on Law     *
Enforcement Standards & Training,     *
    *
        Appellants.     *

_____

Submitted:     November 21, 1997

Filed:     September 11, 1998

_____

Before RICHARD S. ARNOLD,[1] Chief Judge, and McMILLIAN and BEAM,
    Circuit Judges.

_____

McMILLIAN, Circuit Judge.


Christopher Alsbrook brought this action in the United States District Court for
the District of Arkansas, pursuant to the Americans with Disabilities Act (ADA), 42

---

[1]The Honorable Richard S. Arnold stepped down as Chief Judge on April 17,
1998. He has been succeeded by Honorable Pasco M. Bowman.

U.S.C. § 12132, and 42 U.S.C. § 1983, against his employer, the City of Maumelle, Arkansas (the City), as well as the State of Arkansas (the State), the Arkansas Commission on Law Enforcement Standards & Training (ACLEST), and the commissioners of the ACLEST (the commissioners) in their individual and official capacities. The State, ACLEST, and the commissioners (collectively, appellants) moved for summary judgment asserting that Alsbrook's claims against them were barred by Eleventh Amendment immunity and that the commissioners were protected by qualified immunity from being sued in their individual capacities. The district court denied appellants' motion, <u>Alsbrook v. City of Maumelle</u>, No. LR-C-96-8 (E.D. Ark. Mar. 24, 1997) (hereinafter "slip op."), and they appealed. For reversal, appellants argue that the district court erred in holding (1) that Congress, in enacting the ADA, properly exercised its constitutional authority under the commerce clause and the Fourteenth Amendment in abrogating the State's Eleventh Amendment immunity and (2) that the commissioners are not protected by qualified immunity from being sued in their individual capacities under § 1983 for violating the ADA. Pursuant to 28 U.S.C. § 2403(a), the United States has intervened in this appeal to oppose appellants' Eleventh Amendment argument, in defense of the constitutionality of the ADA. For the reasons discussed below, we affirm in part and reverse in part and remand the case to the district court for further proceedings consistent with this opinion.

## Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. § 1343. Appellants timely brought this interlocutory appeal pursuant to Fed. R. App. P. 4(a). Appellate jurisdiction is based upon the collateral order exception to 28 U.S.C. § 1291. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 524-30 (1985); <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 546 (1949).

## Background

The following summary of the factual background is largely based upon the district court's statement of uncontroverted facts.  See slip op. at 1-2.  Alsbrook has been employed by the Maumelle Department of Public Safety since January of 1993. In December of 1993, he completed the basic law enforcement officer training program and successfully met all requirements to be certified as a law enforcement officer in the State of Arkansas except that he has corrected vision in his right eye of 20/30.[2]  In order to be certified as a law enforcement officer in the State of Arkansas, an applicant must meet standards established by the ACLEST, including a requirement of 20/20 corrected or uncorrected vision in each eye.  Alsbrook's vision in his right eye cannot be corrected to 20/20 due to a congenital condition called amblyopia.  Alsbrook's doctor has written a letter stating the opinion that Alsbrook's amblyopia would not impair his ability to perform any activity or type of work.  While attending the Arkansas Law Enforcement Training Academy, Alsbrook received an "expert" rating for his shooting with a handgun.  He has received an "expert" target-shooting score each time he has tried to qualify as a law enforcement officer with the City.  The City has admitted that Alsbrook "has, and can, perform all essential functions of a police officer."  Id. at 2.  After being denied ACLEST certification in September 1995, Alsbrook applied for a waiver of the 20/20 vision requirement, but that request was denied.

Alsbrook brought the present action in federal district court seeking damages and injunctive relief on grounds that the City, the State, the ACLEST, and the commissioners violated his rights under the ADA and 42 U.S.C. § 1983 by refusing to certify him as a law enforcement officer because of his eyesight disability, or because they regard him as having a disability.  In his complaint, Alsbrook alleges that the City

---

[2]Alsbrook's corrected vision in his left eye is 20/20, and his corrected vision with both eyes is 20/20.

informed him that he would be terminated because he lacks certification by the ACLEST.[3]  Joint Appendix at 5.

Appellants moved for summary judgment claiming that the State, state agencies, and state officials in their official capacity, are entitled to Eleventh Amendment immunity, that the commissioners may not be sued in their individual capacities for ADA violations, and that the commissioners are, in any case, entitled to qualified immunity.  The district court denied their motion.  In so doing, the district court was cautious to point out that

> [t]he narrow holding of this Order is simply that the defendants are not entitled to summary judgment, either in their official or individual capacities.  At trial, the defendants may be able to demonstrate that the standards they set are reasonable and rationally related to necessary skills for law enforcement officers.  On the record currently before the Court, the defendants are not entitled to judgment as a matter of law.

Slip op. at 9.  Appellants timely appealed.

## Discussion

Although a denial of summary judgment is ordinarily not considered a final judgment for purposes of permitting an appeal pursuant to 28 U.S.C. § 1291, an exception is made where the moving party has sought dismissal on the basis of absolute or qualified immunity.  See Mitchell v. Forsyth, 472 U.S. at 524-30.  We review the district court's denial of summary judgment de novo.  Rowe v. Lamb, 130 F.3d 812, 814 (8th Cir. 1997); Burnham v. Ianni, 119 F.3d 668, 673 (8th Cir. 1997) (en banc).

---

[3]At his deposition taken on June 14, 1996, Alsbrook testified that, at that time, he continued to be employed by the City of Maumelle in an undefined capacity and that his "position [was] just pending due to litigation."  Joint Appendix at 72.

The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

*Eleventh Amendment immunity*

Appellants first argue that the district court erred in failing to grant them summary judgment on the basis of Eleventh Amendment sovereign immunity. In rejecting appellants' Eleventh Amendment argument, the district court stated: "[t]he Court is unpersuaded by the State defendants' analysis of Eleventh Amendment immunity. The Americans with Disabilities Act was passed under the auspices of the Fourteenth Amendment as well as the Commerce Clause. The reasoning of [Seminole Tribe v. Florida, 517 U.S. 44 (1996) (Seminole Tribe),] is inapplicable to the ADA." Slip op. at 3.

Because the State has not waived its sovereign immunity and consented to suits against it pursuant to the ADA, Congress could not validly abrogate the State's Eleventh Amendment immunity unless (1) Congress unequivocally expressed its intent to abrogate that immunity and (2) Congress acted pursuant to a valid exercise of power. Seminole Tribe, 517 U.S. at 55 (striking as unconstitutional Congress's establishment of a private federal cause of action against the states under the Indian Gaming Regulatory Act because Congress lacked power under the Indian Commerce Clause to unilaterally abrogate the states' Eleventh Amendment immunity). On appeal, appellants concede that Congress has unequivocally expressed within the ADA its intent to abrogate the states' Eleventh Amendment immunity. See 42 U.S.C.§ 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a

-6-

violation of this chapter."). Appellants maintain, however, that Congress has not acted pursuant to a valid exercise of power under either the commerce clause or the Fourteenth Amendment. Therefore, appellants conclude, Congress exceeded its constitutional authority in creating a private federal cause of action against the states and state entities under the ADA. We disagree.

It is well-established that the states may not, under the equal protection clause of the Fourteenth Amendment, arbitrarily discriminate against individuals with disabilities. See, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985) (Cleburne) ("[t]o withstand equal protection review, legislation that distinguishes between the mentally retarded and others must be rationally related to a legitimate government purpose"). Moreover, "[l]egislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power [under § 5 of the Fourteenth Amendment] even if in the process it prohibits conduct which is not itself unconstitutional and intrudes into 'legislative spheres of autonomy previously reserved to the States.'" City of Boerne v. Flores, 117 S. Ct. 2157, 2163 (1997) (Flores) (citation omitted) (striking as unconstitutional the Religious Freedom Restoration Act of 1993 (RFRA) as an invalid exercise of Congress's enforcement power under § 5 of the Fourteenth Amendment because statute went beyond remedial or preventive purpose and instead substantively interpreted constitutional provisions). "It is for Congress in the first instance to 'determin[e] whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment,' and its conclusions are entitled to much deference." Id. at 2172 (quoting Katzenbach v. Morgan, 384 U.S. 641, 651 (1966)).

In Flores, the Supreme Court warned, however, that there must be a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." Id. at 2164. In assessing the constitutionality of RFRA in light of that requirement, the Supreme Court observed that "RFRA's legislative record lacks examples of modern instances of generally applicable laws passed because of religious

bigotry."  Id. at 2169.  Accordingly, the Supreme Court concluded that there was not the requisite "congruence and proportionality" between the injury to be prevented or remedied and RFRA.

By contrast, Congress incorporated into the ADA detailed and specific findings regarding the nature and extent of persistent discrimination suffered by individuals with disabilities "in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services."  42 U.S.C. § 12101(a)(3).  The ADA specifically states that "individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society," and that this unequal treatment is "based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to society."  Id. § 12101(a)(7).  The ADA's statement of purpose provides:

It is the purpose of this chapter –

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

Id. § 12101(b). In light of these legislative statements, and the deference properly afforded Congress, we agree with the Seventh Circuit and other courts of appeals in holding that,

> [l]ike the other antidiscrimination statutes, the Americans with Disabilities Act is an exercise of Congress's power under section 5 of the Fourteenth Amendment (as well as under the commerce clause, which is not excepted from the Eleventh Amendment) to enact legislation designed to enforce and bolster the substantive provisions of the amendment, in this case the equal protection clause.

Crawford v. Indiana Dep't of Corrections, 115 F.3d 481, 487 (7th Cir. 1997); accord Kimel v. Florida Bd. of Regents, 139 F.3d 1426, 1433 (11th Cir. 1998); Coolbaugh v. Louisiana, 136 F.3d 430, 438 (5th Cir. 1998), petition for cert. filed, 66 U.S.L.W. 3783 (U.S. May 28, 1998) (No. 97-1941); Clark v. California, 123 F.3d 1267, 1270 (9th Cir. 1997), cert. denied, 118 S. Ct. 2340 (1998).[4]  In sum, we conclude that Congress did

---

[4]In Autio v. AFSCME, Local 3139, 140 F.3d 802 (8th Cir. 1998) (Autio), a panel of this court concluded that Congress properly enacted the ADA under § 5 of the Fourteenth Amendment and that the State of Minnesota was not entitled to Eleventh Amendment immunity from actions brought under the ADA. However, by order dated July 7, 1998, the State of Minnesota's motion for rehearing en banc in Autio was granted, and the panel's opinion and judgment were vacated. The case has been set for oral argument before the court en banc on September 23, 1998.

not exceed its constitutional authority in enacting the ADA.[5]  Appellants are not entitled to Eleventh Amendment immunity from Alsbrook's ADA claim.

*Qualified immunity*

Appellants next argue that the district court erred in failing to grant summary judgment dismissing Alsbrook's § 1983 claim against the commissioners in their individual capacities because the commissioners are protected by qualified immunity. They contend that no violation of the ADA has occurred and that, even if an ADA violation has occurred, the commissioners did not violate Alsbrook's clearly established rights.  Alternatively, they maintain that the commissioners may not be sued *individually* for violating the ADA even if the claim is asserted pursuant to § 1983.

"'While the denial of a motion for summary judgment is not normally an appealable final judgment, an exception exists for a summary judgment order denying qualified immunity . . . *[and for] issues of law that are closely related to the qualified immunity determination.*'" Beyerbach v. Sears, 49 F.3d 1324, 1325 (8th Cir. 1995) (emphasis added) (quoting Henderson v. Baird, 29 F.3d 464, 467 (8th Cir. 1994), cert. denied, 515 U.S. 1145 (1995)).  In the present case, the legal question of whether a

_____

[5]We note that the Supreme Court has twice recently decided issues concerning the correct interpretation of the ADA.  See Bragdon v. Abbott, 118 S. Ct. 2196 (1998) (Bragdon) (holding that non-symptomatic HIV infection falls within meaning of "disability" under the ADA); Pennsylvania Dep't of Corrections v. Yeskey, 118 S. Ct. 1952 (1998) (Yeskey) (holding that inmates in state prisons are not excluded from bringing claims under the ADA).  In Yeskey, the Supreme Court specifically stated: "[w]e do not address another issue presented by petitioners: whether application of the ADA to state prisons is a constitutional exercise of Congress's power either under the Commerce Clause . . . or § 5 of the Fourteenth Amendment." Id. at 1956 (citations omitted).  Yeskey was decided on June 15, 1998.  One week later, on June 22, 1998, the petition for certiorari was denied in Clark v. California, 123 F.3d 1267, 1270 (9th Cir. 1997), cert. denied, 118 S. Ct. 2340 (1998).

§ 1983 action can be maintained against state officials in their individual capacities for alleged ADA violations is a dispositive question of law closely related to the qualified immunity determination and appropriate for disposition at this time. See Mitchell v. Forsyth, 472 U.S. at 526 (holding that a state official may bring an interlocutory appeal when his or her qualified immunity defense is rejected at the summary judgment stage because "[t]he entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

The ADA provides a remedy for discrimination against individuals with disabilities by any "public entity," as defined within the statute. 42 U.S.C. §§ 12131-12133.[6] By contrast, the statute does not expressly provide a remedy against public officials individually.[7] "[I]t is an elemental canon of statutory construction that where

---

[6]Section 12131(1) provides:

The term "public entity" means –

    (A) any State or local government;
    (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
    (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45).

Section 12132 provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

[7]It is also undisputed that the commissioners are not "covered entities" within the meaning of 42 U.S.C. § 12111(2), which provides "[t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee."

-11-

a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 19 (1979), <u>quoted in</u> <u>DeYoung v. Patten</u>, 898 F.2d 628, 634 (8th Cir. 1990) (<u>DeYoung</u>). "'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" <u>Id.</u> (quoting <u>Botany Worsted Mills v. United States</u>, 278 U.S. 282, 289 (1929)). Accordingly, we hold that state officials may not be sued in their individual capacities directly under the provisions of the ADA. The only question remaining, therefore, is whether a plaintiff may nevertheless sue a state official in his or her individual capacity under § 1983 for violating the ADA.

> Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States, and we have given that provision the effect its terms require, as affording redress for violations of federal statutes, as well as of constitutional norms. We have, it is true, recognized that even the broad statutory text does not authorize a suit for every alleged violation of federal law. A particular statutory provision, for example, may be so manifestly precatory that it could not fairly be read to impose a "binding obligatio[n]" on a governmental unit, or its terms may be so "vague and amorphous" that determining whether a "deprivation" might have occurred would strain judicial competence. And Congress itself might make it clear that violation of a statute will not give rise to liability under § 1983, either by express words or by providing a *comprehensive alternative enforcement scheme*. But apart from these exceptional cases, § 1983 remains a generally and presumptively available remedy for claimed violations of federal law.

<u>Livadas v. Bradshaw</u>, 512 U.S. 107, 132-33 (1994) (citations omitted) (emphasis added). This court has described the analysis as a two-stage process.

> In step one, a court must decide whether the claim actually involves a violation of a federal right, as opposed to a violation of a federal law. . . . In the second step, the court must determine if Congress has

> foreclosed enforcement under § 1983. On this point, the defendant bears the burden and the inquiry focuses on *whether Congress has provided a comprehensive and carefully tailored remedial scheme within the statute in question, so as to make enforcement under § 1983 inconsistent.*

Arkansas Med. Soc'y, Inc. v. Reynolds, 6 F.3d 519, 523 (8th Cir. 1993) (citations omitted).

Because the ADA itself contains a comprehensive remedial and enforcement scheme to address intentional discrimination against individuals with disabilities by public entities including state agencies and instrumentalities of state or local government, Alsbrook is not without recourse for the ADA violation he alleges. We are of the opinion that a § 1983 remedy against state officials in their individual capacity, for violating the ADA, "would be inconsistent with the overall legislative scheme." DeYoung, 898 F.2d at 635. Notably, this is not the first time that this court has considered whether or not a § 1983 cause of action may be asserted based on an alleged violation of the ADA. In Davis v. Frances Howell Sch. Dist., 104 F.3d 204, 206 (8th Cir. 1997), this court, in dicta, expressed the view that "the comprehensive enforcement mechanisms provided under § 504 [of the Rehabilitation Act] and the ADA suggest Congress did not intend violations of those statutes to be also cognizable under Section 1983." We agree with that conclusion and now hold that Alsbrook may not maintain a § 1983 action against the commissioners in their individual capacities for allegedly violating his rights under the ADA. Because we hold that Alsbrook has no remedy under § 1983 against the commissioners individually, we need not determine whether the commissioners are otherwise entitled to qualified immunity.[8]

**Conclusion**

---

[8]We note, however, that our holding on the § 1983 issue has no bearing on the merits of Alsbrook's remaining claims.

For the reasons stated, we affirm the district court's denial of summary judgment for appellants on their claim of Eleventh Amendment immunity and reverse the district court's denial of summary judgment for the commissioners insofar as they are sued in their individual capacities pursuant to § 1983. The case is remanded to the district court for further proceedings consistent with this opinion.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. However, my dissent, at this point, is not directed toward the substance of the court's opinion. I may well agree with the holding at an appropriate time in the future.

I would stay the filing of this opinion because it, in large part, deals with the same issue that is before the court en banc in Autio v. State of Minnesota, No. 97-3145, a case that will be heard on September 23, 1998.

If the court en banc disagrees with the opinion reached by the panel in Autio, this filing will be an exercise in futility. Should the Autio panel be supported by the court en banc, this opinion can then be filed with proper reference to the Autio en banc decision.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-