_____

No. 95-2722WA

_____


Ralph P. Forbes, and            *
The People,                     *
                                *
          Appellant,            *
                                *
     v.                         *
                                *
                                *
The Arkansas Educational        *
Television Commission, and its  *
Board of Directors in their     *
Official Capacities; The        *
Arkansas Educational            *
Telecommunications Network      *
Foundation, and its Members and *
Officers Susan J. Howarth, in   *   On Appeal from the United
her Official Capacity as        *   States District Court
Executive Director; Victor      *   for the Western District
Fleming, in his Official        *   of Arkansas.
Capacity as Chairman; G. E.     *
Campbell, in his Official       *
Capacity as Vice-Chairman;      *
Dr. Caroline Whitson, in her    *
Official Capacity as Secretary; *
Diane Blair, in her Official    *
Capacity as Commissioner;       *
S. McAdams, in his Official     *
Capacity as Commissioner;       *
James Ross, in his Official     *
Capacity as Commissioner;       *
Jerry McIntosh, in his Official *
Capacity as Commissioner;       *
Lillian Springer, in her        *
Official Capacity as            *
Commissioner; Amy L. Oliver, in *
her Official Capacity as        *
Production Manager; Bill        *
Clinton, his Official Capacity  *
as Governor of the State of     *
Arkansas; John Does, Sued as    *
certain "John Doe" crooked,     *
lying politicians and           *

political "dirty tricks"          *
operatives and special            *
interests, etc.; KHBS             *
TV/Channel 40 UHF; KHOG           *
TV/Channel 29 UHF; American       *
Broadcasting Company, Agent       *
Darrel Cunningham;                *
Steve Barnes, KARK TV,            *
4 Eye-Witness News and AETN       *
Producer; Oscar Eugene Goss,      *
Arkansas Educational Television   *
Network; Carol Adornetto;         *
Larry Foley; Lavenia Craig,       *
in her Official Capacity as       *
Commissioner; Robert Doubleday,   *
in his Official Capacity as       *
Commissioner,                     *
                                  *
          Appellees.              *

_____

Submitted:  April 11, 1996

Filed:  August 21, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN and JOHN R.
    GIBSON, Circuit Judges.
_____

RICHARD S. ARNOLD, Chief Judge.


    This case is before us for the second time.  On the prior appeal, this Court, sitting en banc, held that the plaintiff, Ralph P. Forbes, had stated a claim.  Forbes v. Arkansas Educational Television Network, 22 F.3d 1423 (8th Cir.) (en banc), cert. denied, 115 S. Ct. 500 (1994) (petition of AETN), 115 S. Ct. 1962 (1995) (petition of Mr. Forbes).  The case arises out of a debate staged by the defendant Arkansas Educational Television Commission, an agency of the State of Arkansas, between the Democratic and Republican candidates for Congress in the Third District of Arkansas in 1992.  Mr. Forbes, who was also a legally qualified candidate in that race, asked to be included in the debate but was

-2-

refused.  He claimed, among other things, that his exclusion violated the First Amendment, as made applicable to the states through the Due Process Clause of the Fourteenth Amendment.  We held that the First Amendment applied fully to the Arkansas Educational Television Network (AETN), and that the defendants were not free to exclude Mr. Forbes without a reason good enough to pass muster under that Amendment.  The case had not progressed far enough for defendants to file an answer.  Hence, there was no way of knowing, on the state of the record as it then existed, why AETN had excluded Mr. Forbes.  The case was remanded for further proceedings.

On remand, the plaintiff's First Amendment claim was tried to a jury.  By special verdicts, the jury found that the decision to exclude the plaintiff from the debate was not the result of political pressure, and that it was not based on opposition towards plaintiff's political opinions.  In addition, the District Court instructed the jury that the congressional debate, as set up by the defendant network, was a non-public forum.  Judgment was entered for defendants.

Mr. Forbes now appeals.  He argues that the debate was a limited public forum, and that the reason given for excluding him, that he was not a "viable" candidate, even if it was the true reason, was not legally sufficient.  We agree.  We hold that a governmentally owned and controlled television station may not exclude a candidate, legally qualified under state law, from a debate organized by it on such a subjective ground. To uphold such a defense would, in our view, place too much faith in government.

I.

We briefly restate enough of the facts and proceedings below to place the present issue in context. In October 1992, the Arkansas Educational Television Commission decided to conduct and broadcast a debate between the Republican and Democratic candidates for Congress in the Third District of Arkansas. The plaintiff, Ralph P. Forbes, then became a duly qualified independent candidate under state law. He was certified as an independent candidate because he had gathered enough signatures on petitions. Under state law, a candidate must file petitions signed by at least three per cent. of the qualified electors in the district in which he is seeking office, provided, however, that no more than 2,000 signatures are required. Ark. Code Ann. § 7-7-103(c)(1). Mr. Forbes heard about the debate and asked to be included. AETN refused, and the debate took place on October 22, 1992, without Mr. Forbes's participation. In the meantime, the plaintiff had filed suit in the District Court, seeking a preliminary injunction, but this relief was denied. Thereafter, the District Court granted AETN's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

The plaintiff appealed, and this Court, sitting en banc, affirmed in part and reversed in part. We rejected Mr. Forbes's claim under the Federal Communications Act, holding that § 315 of that Act, 47 U.S.C. § 315, does not create a private cause of action. As to the First Amendment claim, however, we held that Forbes's pleading was sufficient to survive a motion under Rule 12(b)(6). The defendants argued that the case should be governed by public-forum analysis. In response to this position, we held that governmentally owned television stations are not traditional public fora, but that they might, under the particular circumstances of any given case, create a limited public forum, "a place that generally is not open for public expression, but that

-4-

the government has opened for use for free speech for only a limited period of time, a limited topic, or a limited class of speakers." Forbes, 22 F.3d at 1429 (citations omitted). We added:

> Since the key determination of whether a forum is a limited public one is the government's acquiescence in its use for expressive purposes, it is certainly possible that AETN created a limited public forum when it chose to sponsor a debate among the candidates for the Third Congressional seat. This is a determination the factfinder would have to make after carefully looking at the nature of the debate forum. If it were determined that AETN had created a limited public forum, then Forbes would have a First Amendment right to participate in the debate and could be excluded only if AETN had a sufficient government interest.

Ibid. Observing that "AETN . . . has not yet articulated any principled reason for excluding Forbes," id. at 1430, we remanded for further proceedings.

On remand, as we have previously noted, the District Court tried the case to a jury. In accordance with our en banc opinion, the Court correctly refused to submit to the jury any claim under the Communications Act itself. Only the First Amendment claim was submitted. But before the case went to the jury, the District Court held, as a matter of law, that the debate in question was a non-public forum. The District Court said: ". . . the Court has ruled that the type of forum we are talking about in this case is a non-public forum." Thus, the question whether the debate was a non-public forum or a limited public forum was not submitted to the factfinder. It was taken from the jury and decided by the Court. The issue whether defendants' proffered justification -- that Forbes was not a viable candidate -- would be legally sufficient if the debate were a limited public forum was not reached. Instead,

-5-

the District Court submitted to the jury only those discrete issues of fact that it deemed relevant under its holding that the debate was a non-public forum.

On special verdicts, the jury found, first, that the decision to exclude Mr. Forbes was not the result of any political pressure coming from outside the professional staff of AETN. (Under the theory presented by defendants at the trial, this would have been the only basis for a recovery by the plaintiff.) The jury found, in addition, that the defendants did not exclude Mr. Forbes from the debate because of disagreement with his opinions. In accordance with these findings of fact and the Court's holding on the public-forum issue, judgment was then entered for defendants.

## II.

We first discuss three procedural arguments made by Mr. Forbes as part of his attempt to upset the judgment of the District Court. The first argument has to do with the special interrogatories put to the jury. The first of these interrogatories read as follows:

> Do you find from a preponderance of the evidence that the defendants' decision to exclude Mr. Forbes from the debate was influenced in any way by political pressure from anyone inside or outside of the Arkansas Educational Television Network?

Trial transcript (Tr.) 475. The jury answered no to this question. Id. at 502. Mr. Forbes's argument is that this interrogatory was unnecessary to a finding that AETN violated his First Amendment rights, and that submitting it to the jury was confusing. We do not agree that use of the interrogatory was reversible error.

Whether to submit a case on special interrogatories, and, if

-6-

so, how to phrase them, are matters committed, within broad limits, to the discretion of the district courts. We have no reason to believe that this jury was confused. We have great faith in juries, and their desire and ability to follow instructions and make distinctions among the various issues put before them. It may be true that submission of this special interrogatory, strictly speaking, was unnecessary. The First Amendment can be violated even if no political pressure is exerted. For example, officials of AETN, entirely apart from political pressure, might have decided to exclude Mr. Forbes because of disagreement with his political opinions. (As we have seen, the jury found that this did not occur, but, at the time the case was submitted to the jury, this was still a live issue.) It is very likely that the exertion of political pressure, if it had occurred, would have been a good theory of First Amendment violation, because such pressure, in all probability, would have proceeded out of someone's disagreement with or prejudice against Mr. Forbes's political positions. The jury's negative answer to the interrogatory did not mean that the case was over; it meant only that one possible theory of liability had been rejected. The jury remained free to consider the other interrogatories submitted to it, and we believe it did so conscientiously.

The jury then went on to answer the second interrogatory, asking whether the decision to exclude Mr. Forbes was based on disagreement with his political viewpoint. The answer to this question was no. We do not know what our answer would have been if we had been sitting on the jury, but that is not important. There was conflicting evidence on this issue, and it could have gone either way. Making decisions of this kind is exactly what juries are for. It was within the discretion of the District Court to submit the issue to the jury in this form, and the evidence is sufficient to support its negative answer.

Mr. Forbes also argues that it was prejudicial error to

exclude evidence which, he contends, would have shown that the husband of the producer of the debate for AETN was prejudiced against him. We cannot agree that any error was committed in this regard. If we assume that the husband did not like Mr. Forbes's opinions, and if we further assume, and this would be something of a stretch on the present record, that his wife knew this, it by no means follows that the wife was in agreement. Spouses' political opinions sometimes agree. They sometimes disagree. We do not think any general inference can be drawn from the opinion of one spouse to that of the other. The District Court did not abuse its discretion in rejecting this evidence.[1]

## III.

It remains to discuss what has emerged as the main issue -- whether the congressional debate staged by AETN was a limited-purpose public forum, or a non-public forum, and, if it was the former, whether AETN's reason for excluding Mr. Forbes can survive scrutiny under the First Amendment. (We agree with the District Court that the jury's finding that the exclusion was not viewpoint-based is fatal to Mr. Forbes's case if the debate was a non-public forum.) That this is the major issue in the case became clear at oral argument. Counsel for defendants, citing Bose Corp. v. Consumer's Union, 466 U.S. 485 (1984), argued that the issue of how to characterize the forum was properly decided by the judge. Certain First Amendment issues, he asserted, are for the Court, not the jury, and are then subject to de novo review on appeal.

---

[1]Mr. Forbes also argues that the District Court erred in refusing to submit the issue of punitive damages to the jury. We believe the District Court acted correctly in this regard. There was no substantial evidence of malice or other outrageous conduct on the part of these defendants. Therefore, there would have been no basis for an award of punitive damages, and such an award, if returned by the jury, would have to be set aside for lack of sufficient evidence.

We are not sure that <u>Bose</u> holds that all First Amendment issues of fact are to be decided by the court instead of the jury in cases otherwise triable to a jury under the Seventh Amendment. This is an action at law for damages, a timely demand for jury trial was made, and a jury was properly empaneled. Certain issues of historical fact -- for example, whether Forbes was excluded from the debate because of hostility to his opinions -- are certainly for the jury, assuming that the evidence was in sufficient conflict to allow reasonable jurors to go either way. Thus, the issues covered by the special interrogatories put to the jury in this case were correctly treated as jury issues, and we do not understand defendants to argue otherwise.

By contrast, the question of what exactly the forum was in this case, whether it was a non-public forum or a limited public forum, is a different sort of issue. It is a mixed question of law and fact, as to which the answer is obtained by applying legal principles to facts. We do not understand the historical facts -- for example, who set up the debate, who was invited to attend, who was excluded, and the like -- to be in dispute. If defendants, by citing <u>Bose</u>, are asserting that such issues are never to be submitted to juries, we are not convinced. <u>Bose</u> has to do with the reviewing or appellate function in First Amendment cases. It does not, at least not in so many words, address the division of functions between judge and jury at the trial level.

In the present case, this distinction, between the division of functions at the trial level and the standard of review at the appellate level, seems to us of no practical significance. Suppose the district court had allowed the issue of how to characterize the forum to go to the jury, and suppose the jury had decided it one way or the other. The party losing this issue would surely have filed a motion for judgment notwithstanding the verdict, now called a motion for judgment as a matter of law, and the district court would have ruled on the motion. In doing so, the district court

would have gone through the same mental process engaged in by appellate courts. It would have been exercising essentially a reviewing function. And this Court, in turn, would have been bound to apply the Bose approach on appeal.

The Supreme Court's opinion in Bose holds that appellate courts must "conduct an independent review of the evidence on . . . dispositive constitutional issue[s]" in First Amendment cases. 466 U.S. at 508. Bose was a bench-tried case, but the opinion clearly indicates that the same appellate standard applies in cases tried to juries:

> . . . The rule of independent review assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge.

Id. at 501. In short, "First Amendment questions of 'constitutional fact' compel this Court's de novo review." Id. at 508-09 n.27. Our recent opinion in Families Achieving Independence and Respect v. Nebraska Department of Social Services, _____ F.3d _____, _____, 1996 WL 426147 *3 (8th Cir., July 31, 1996), reaches the same conclusion: "[W]here . . . constitutional issues [in First Amendment cases] present mixed questions of law and fact, our review is de novo."

We have a complete record before us on the public-forum question, and we have the holding of the District Court on that issue. We now proceed to exercise our constitutional duty to conduct an independent review.

As an initial matter, we must determine whether the forum at issue is the television station, AETN, or the Third District congressional debate. At oral argument and throughout its brief,

AETN contends that the station is the relevant forum.  Forbes, on the other hand, contends that our analysis should focus on the debate.

The choice between the two forums suggested is not a difficult one.  "In defining the forum we [] focus[] on the access sought by the speaker."  Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 801 (1985).  If the speaker seeks general access to public property, the forum encompasses that property.  But if only limited access is sought, we must take a "more tailored approach to ascertain[] the perimeters of a forum within the confines of the government property."  Ibid.

Forbes sought access to the debate alone.  The debate is a particular program among the numerous programs broadcast by AETN each day.  Traditionally, when a speaker "seek[s] access to a particular means of communication," it is that particularized forum which becomes the focus of analysis.  Ibid.  In keeping with that tradition, we conclude that the debate - the means of communication to which Forbes seeks access - is the relevant forum in this case.

Having identified the forum, we now turn to the more difficult question of determining its character.  Forbes maintains that by staging the debate, AETN created a limited public forum.  This type of forum has been defined as a forum "created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."  Id. at 802. The Supreme Court has recognized the existence of a limited public forum in a number of instances where the State "does not itself speak or subsidize transmittal of a message it favors but instead . . . encourage[s] a diversity of views from private speakers." Rosenberger v. Rector & Visitors of Univ. of Va., 115 S. Ct. 2510, 2519 (1995).  Examples of limited public forums include university meeting facilities opened for use by registered student groups,

<u>Widmar v. Vincent</u>, 454 U.S. 263 (1981), and municipal theaters open to theater productions, <u>Southeastern Promotions, Ltd. v. Conrad</u>, 420 U.S. 546 (1975). See also <u>Lehman v. City of Shaker Heights</u>, 418 U.S. 298 (1974) (advertising space on public bus held to be a limited public forum for commercial advertising); <u>Healy v. James</u>, 408 U.S. 169 (1972) (public college's recognition of student political groups created a limited public forum).

A non-public forum, by contrast, is "[p]ublic property which is not by tradition or designation a forum for public communication . . .." <u>Perry Educ. Assn. v. Perry Local Educators' Assn.</u>, 460 U.S. 37, 46 (1983). A non-public forum is not necessarily transformed into a public or limited public forum even though the State engages in a practice of "selective access," by "allow[ing] some organizations . . . to use the facilities." <u>Id.</u> at 47. <u>Capitol Square Review and Advisory Bd. v. Pinette</u>, 115 S. Ct. 2440, 2446 (1995) (forum is nonpublic when "reserved for specific official uses"). In <u>Perry</u>, the Supreme Court held that a public school's internal mail system was a non-public forum even though officials had allowed some community organizations to use the system. <u>Perry</u>, 460 U.S. at 47 (finding no evidence that "permission ha[d] been granted as a matter of course to all," the Court concluded that "selective access does not transform government property into a public forum."). Similarly, in <u>Cornelius</u>, the Supreme Court held that the Combined Federal Campaign (CFC), an annual charitable-fundraising drive administered by the Office of Personnel Management, was a non-public forum. As it did in <u>Perry</u>, the Court reasoned that "selective access [to charities], unsupported by evidence of a purposeful designation for public use, [did] not create a public forum." <u>Cornelius</u>, 473 U.S. at 805.

There is no bright line or objective test for determining the character of the forum. We can say without reservation, however, that the forum in this case, the debate, is a limited public forum. Just as the university in <u>Widmar</u> created a limited public forum by

opening its facilities to registered student groups for expressive speech, AETN, by staging the debate, opened its facilities to a particular group -- candidates running for the Third District Congressional seat. The debate may be readily distinguished from the forums at issue in Cornelius and Perry. In Cornelius, it was clear that the CFC was not created "for purposes of providing a forum for expressive activity." Ibid. The expression made by giving money to charity was merely incidental to the purpose for which the forum was opened -- "to minimize the disruption to the workplace that had resulted from unlimited ad hoc solicitation activities by lessening the amount of expressive activity occurring on federal property." Ibid. Likewise, the forum in Perry, the school's internal mail system, was designed solely for expression relating to school business. Access to the system was granted to groups on an individual basis and was not "granted as a matter of course" to any particular group. The debate staged by AETN, on the other hand, was staged in order for the candidates to express their views on campaign issues.

The debate was surely a place opened by the government for a limited class of speakers. What was that class? Was it all candidates for Congress legally qualified to appear on the ballot, or was it simply the Republican and Democratic candidates? The latter answer, which essentially is the position espoused by defendants, is not supportable either as a matter of law or logic. Surely government cannot, simply by its own ipse dixit, define a class of speakers so as to exclude a person who would naturally be expected to be a member of the class on no basis other than party affiliation. It must be emphasized that we are dealing here with political speech by legally qualified candidates, a subject matter at the very core of the First Amendment, and that exclusion of one such speaker has the effect of a prior restraint - it keeps his views from the public on the occasion in question.

The real issue, we think, is the legal sufficiency of the

-13-

reason given for the exclusion.  If AETN had considered Mr. Forbes a viable candidate, it would, by its own account, have included him in the debate.  There is nothing about being a Democrat or a Republican, <u>a priori</u>, that is relevant here.  Rather, AETN's point is that Mr. Forbes, in the opinion of the network, had no chance to win.  It therefore decided that its viewers should not hear Mr. Forbes's opinions as part of the debate involving the other candidates qualified to appear on the ballot.

We do not think that AETN's opinion on such a debatable matter as the political viability of a candidate for Congress more than two months in advance of the election can be a sufficient basis for narrowing the channels of public discourse.  AETN itself characterizes the criteria it used as follows:  "While these criteria can to some extent be considered as objective, ultimately their use is essentially subjective."  Brief for Appellees 30.  In a sense, the State of Arkansas had already, by statute, defined political viability.  Mr. Forbes had gathered enough signatures to appear on the ballot.  So far as the law was concerned, he had equal status with the Republican nominee and the Democratic nominee.  Whether he was viable was, ultimately, a judgment to be made by the people of the Third Congressional District, not by officials of the government in charge of channels of communication.

We have no doubt that the decision as to political viability is exactly the kind of journalistic judgment routinely made by newspeople.  We also believe that the judgment in this case was made in good faith.  But a crucial fact here is that the people making this judgment were not ordinary journalists:  they were employees of government.  The First Amendment exists to protect individuals, not government.  The question of political viability is, indeed, so subjective, so arguable, so susceptible of variation in individual opinion, as to provide no secure basis for the exercise of governmental power consistent with the First Amendment. Compare <u>Families Achieving Independence and Respect v. Nebraska</u>

-14-

Department of Social Services, supra, _____ F.3d at _____, 1996 WL 426147 *3-4 (vague standard cannot justify exclusion even from a non-public forum). If Mr. Forbes can be excluded today, a Republican or a Democrat who is believed to have no chance of success could be excluded tomorrow. It is worth noting that Mr. Forbes himself received the most votes in the preferential primary for the Republican nomination for Lieutenant Governor in 1990. (He was defeated in a run-off primary.) To give just one more example, in 1958, in the Second Congressional District, a write-in candidate who equipped his supporters with stickers that could readily be applied to the ballot defeated the incumbent Democratic Member of Congress, despite the fact that he began his campaign very shortly before the election. Political viability is a tricky concept. We should leave it to the voters at the polls, and to the professional judgment of nongovernmental journalists. A journalist employed by the government is still a government employee.

In short, we hold that the reason given for excluding Mr. Forbes (and we accept at face value defendants' proffered reason) was not legally sufficient under the First Amendment. It was neither compelling nor narrowly tailored. Mr. Forbes is entitled to a judgment in his favor so declaring. The only issue remaining to be decided is that of damages, whether nominal or compensatory.

The judgment of the District Court is reversed, and the cause remanded for further proceedings consistent with this opinion. The District Court is instructed to enter judgment for the plaintiff Forbes and against the defendant Arkansas Educational Television Commission, and, thereafter, to empanel a jury for the sole purpose of determining the amount of actual damages sustained.

It is so ordered.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.