# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1326

_____

| | | |
|---|---|---|
| GLB Enterprises, Inc., | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| United States of America, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: October 18, 2000

Filed: November 28, 2000

_____

Before WOLLMAN, Chief Judge, LAY and BEAM, Circuit Judges.

_____

LAY, Circuit Judge.

This is an appeal by the United States following a jury verdict for GLB Enterprise, Inc., (GLB) awarding a refund on the payment of excise taxes. GLB asserted that the cotton module retriever it manufactures is exempt from excise taxes imposed by Internal Revenue Code § 4051.[1] The jury found that the retrievers were exempt from tax because they were specially designed for the primary function of off-highway transportation.

_____

[1] Section 4051 imposes an excise tax on truck chassis and bodies.

GLB is in the business of manufacturing and selling cotton module retrievers for loading and transporting cotton. Cotton module retrievers are trucks that are specially equipped to load and transport cotton modules. Cotton modules are compacted bales of picked cotton, usually seven feet high, eight feet wide, and thirty to thirty-five feet long, weighing an average of 18,000 to 22,500 pounds. A cotton module retriever has a specialized body that tilts hydraulically, in a manner similar to a dump truck, to allow the module to be loaded and unloaded. When the body is tilted, the cotton module is pulled onto the retriever by ten to twelve conveyor chains running lengthwise along the bed.[2]

GLB paid excise taxes on cotton module retrievers for the quarter ending December 31, 1992. Subsequently, GLB filed a claim with the Internal Revenue Service (IRS) for a refund based on Treasury Regulation § 48.4061(a)-1(d). After the IRS denied GLB's claim, GLB filed a complaint in district court. Both GLB and the Government submitted motions for summary judgment which were denied. The case then went before a jury. The district court narrowed the focus of the case to the specific factual issues defined in the jury instructions and verdict form.[3] The jury

---

[2]The production of cotton module retrievers by GLB requires the modification of a truck chassis. The truck chassis is generally purchased by the customer, who pays the excise tax. GLB lengthens and reinforces the truck's chassis in order to accommodate the size and weight of the cotton modules. The retriever body, hydraulic tilting mechanism, and track assembly are then attached to the reinforced chassis. In order to operate the retrievers in some states and on interstate highways, special annual permits are needed due to the retrievers' length, width, and weight.

[3]The Government concedes that in accordance with Internal Revenue Code §4051 and Treasury Regulation § 48.4061(a)-1(d)(2)(ii), the district court properly instructed the jury that:

> In order for you to find for the plaintiff, you must find, by a preponderance of the evidence, that the cotton module retrievers manufactured and sold by GLB Enterprises, Inc.:

returned a verdict in favor of the GLB. The United States thereafter moved for a motion for judgment as a matter of law, which the court denied. The United States now appeals.

Discussion

The Government argues that the evidence presented at trial was not sufficient to support the jury's verdict that GLB's cotton module retrievers are exempt from the federal excise tax. The Government believes that GLB did not produce more than a scintilla of evidence to satisfy the tax exempt requirement of Treasury Regulation

1.    Were specially designed for the primary function of transporting, in connection with a farming operation, a particular type of load other than over a public highway; and

2.    That there is a special design and, by reason of their special design, their use for transportation on public highways is substantially limited or substantially impaired.

GLB Enterprises, Inc. v. United States, No. 96 Civ. 1019 (D.S.D. Nov. 3, 1999).

§ 48.4061(a)-1(d)(2)(ii).[4]  See Larson v. Miller, 76 F.3d 1446, 1452 (8th Cir. 1996).  We disagree.

---

[4]A truck chassis is taxable under I.R.C. § 4051 unless it is not a highway vehicle as defined by Treasury Regulation § 48.4061(a)-1(d)(1).  See I.R.C. § 4051(a)(1).  The term "highway vehicle" is defined as "any self-propelled vehicle, or any trailer or semitrailer, designed to perform a function of transporting a load over public highways, whether or not also designed to perform other functions, but does not include a vehicle described in paragraph (d)(2) of this section."  Id.  Treasury Regulation § 48.4061(a)-1(d)(2) contains two exceptions to the definition of "highway vehicle."  The district court held that the first exception does not apply.  The second exception is as follows:

> (ii) Certain vehicles specially designed for off-highway transportation.
> A self-propelled vehicle, or a trailer or semitrailer, is not a highway vehicle if it is (A) specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations, and (B) if by reason of such special design, the use of such vehicle to transport such load over the public highways is substantially limited or substantially impaired.  For purposes of applying the rule of (B) of this subdivision, account may be taken of whether the vehicle may travel at regular highway speeds, requires a special permit for highway use, is overweight, overheight or overwidth for regular use, and any other relevant considerations.  Solely for purposes of determinations under this paragraph (d)(2)(ii), where there is affixed to the vehicle equipment used for loading, unloading, storing, vending, handling, processing, preserving, or otherwise caring for a load transported by the vehicle over the public highways, the functions are related to the transportation of a load over the public highways even though such functions may be performed off the public highways.

Id.

Treasury Regulation § 38.4061(a)-1(d)(2)(ii) requires that the primary function of the cotton module retrievers is for transporting loads other than over a public highway and that the retrievers have a special design that substantially limits or impairs transportation over a public highway. With respect to the first requirement, the Government's position is that the evidence is undisputed that the retrievers were required to travel over public highways, for distances averaging eight to twelve miles and ranging up to 100 miles, in order to perform their designated purpose of transporting cotton modules from the fields to the cotton gins. See Treas. Reg. § 48.4061(a)-1(d)(2)(ii)(A). In addition, one of the special design features of GLB's cotton module retrievers is to load and unload cotton modules. The Government argues that this feature satisfies the requirement of Treasury Regulation § 48.4061(a)-1(d)(2)(ii), which expressly states that

> where there is affixed to the vehicle equipment used for loading, unloading, . . . or otherwise caring for a load transported by the vehicle over the public highways, the functions are related to the transportation of a load over the public highways even though such functions may be performed off the public highways.

GLB responds that the cotton module retrievers are specially designed for off-road use. The evidence from trial reflects that the overall dimensions, frame, reinforcements, track system, gearing, tires, and other components of the vehicle were designed to allow the retrievers to operate in fields, farm roads, and gin yards. GLB concedes that the retrievers are used on public highways, but points out that transportation over a public highway is not their primary purpose. GLB analogizes the present case to an IRS Revenue Ruling involving oil-rig semi-trailers. See Rev. Rul. 77-141, 1977-1 C.B. 317. In the semi-trailer ruling, the IRS found that while the semi-trailers could be used on public highways, their primary purpose was the transportation of oil in oil fields. GLB argues that the same is true for cotton module retrievers. While the retrievers can be used on public highways, their primary design is for off-road use.

GLB also distinguishes the cotton module retrievers from loading and unloading equipment, where the primary design is to transport materials and not to load materials. According to GLB, the special design of the cotton module retrievers is not limited to loading and unloading cotton modules, but includes off-road transportation. Thus, GLB believes it produced sufficient evidence for the jury to conclude that the primary purpose of the cotton module retrievers is not for transportation on public highways.

With respect to the second requirement of Treasury Regulation § 48.4061(a)-1(d)(2)(ii), the Government argues that there is insufficient evidence in the record to show that the retrievers are substantially limited or substantially impaired for highway use. See Treas. Reg. § 48.4061(a)-1(d)(2)(ii)(B). The Government contends the evidence shows that the majority of the distance traveled by the retrievers is on public roads. The Government argues that GLB's own brochures advertise that the retrievers possess long-distance hauling ability. Thus, if the retrievers are substantially impaired from traveling on public roads, then the purpose of the retrievers is also impaired since the sole purpose of the retrievers is to transport cotton from the field to the gin.

The Government further argues that when the size or weight of the cotton modules exceeds the limits set by state law, special permits can be obtained to allow the retrievers to operate fully loaded on public highways. The Government contends that these special permits are proof that state transportation officials do not believe that the ability of cotton module retrievers to carry loads on public highways is substantially impaired. Since the cotton module retrievers can operate on public highways with these permits, the Government reasons that no legal or practical restrictions are placed on the operation of cotton module retrievers on public highways.

GLB, on the other hand, points to evidence from trial showing the use of cotton module retrievers on public highways is substantially limited or impaired. The evidence demonstrates that retrievers are overweight, which impairs braking; are overlength, creating dangerous tail swings; and have a high, rearward center of gravity,

creating dangerous roll instability.  For these reasons, the special permits needed to allow the retrievers to operate on public highways limits their use to certain roads, during certain hours, within certain distances of a gin, and during certain months of the year.  The evidence shows that these restrictions make the retrievers worthless for any purpose other than as a cotton module retriever during the cotton season and that these restrictions place substantial limitations or impairment on the use of cotton module retrievers on public highways.  GLB believes this evidence is more than sufficient for the jury below to find that GLB was exempt from the federal excise tax.

The Government urges that it is entitled to a judgment as a matter of law on the ground that there is insufficient evidence to support the jury verdict.  Our standard for review has been expressed in several ways.  However, the best test, as enunciated early by the Supreme Court, is whether the evidence is such that, without weighing the credibility of the witness or otherwise considering the weight of the evidence, there can be only one conclusion as to the verdict that reasonable persons could have reached.  Lavender v. Kurn, 327 U.S. 645, 653 (1946).  "[O]nly when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear."  Id.; see also Brady v. Southern Railroad Company, 320 U.S. 476, 479-80 (1943).  In considering a judgment as a matter of law, we have long recognized that we must also view the overall evidence in the light most favorable to the verdict holder and that party must be given the benefit of all favorable inferences, which may be drawn from the evidence.  See Stockmen's Livestock Market, Inc. v. Norwest Bank of Sioux City, 135 F.3d 1236, 1240 (8th Cir. 1998); Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 904 (8th Cir. 1995).  In the present case, the evidence was conflicting.  As then-Chief Judge Richard S. Arnold recognized in Forbes v. Arkansas Educational Television Commission, 93 F.3d 497 (8th Cir. 1996):  "We do not know what our answer would have been if we had been sitting on the jury, but that is not important. There was conflicting evidence on this issue, and it could have gone either way.  Making decisions of this kind is exactly what juries are for."  Id.  at 501.

Under existing standards, we find sufficient evidence to uphold the jury verdict.

WOLLMAN, Chief Judge, dissenting.

Because the undisputed evidence so clearly establishes that the primary purpose of the retrievers is to load and then transport cotton modules on public highways that no reasonable jury could find otherwise, I must respectfully dissent from the affirmance of the judgment.

As the court's opinion sets forth, the evidence is undisputed that the retrievers are required to travel over public highways in order to perform their designed purpose of transporting cotton modules from the fields to the cotton gins. Indeed, GLB's own advertising brochure, entitled "Move With The Future," states in part "Whether your module retriever is going on 200-mile hauls or just across the gin yard, you can be assured that you will be able to return to the gin with a module with a G.L.B. Module Retriever."

True enough, the retrievers, given their length, height, and weight, require careful attention by the driver and more than normal space in which to turn from the highway to a gin yard or a loading site. Nevertheless, they can be driven up to and in excess of posted speed limits. Also true enough, the retrievers are specially designed to load the modules, having an ingenious, unique rear-mounted track assembly that enables the operator to load a module without utilizing the reverse gear on the truck itself in all but the most severe operating conditions.

That acknowledged, however, the record is clear that once the operator has loaded the module, the function of the retriever, equal in importance to that of loading the module, is to transport the module over a public highway to a cotton gin. Save for the cotton grower who owns his own gin (and the testimony referred to only one such --

the J.G. Boswell Co. in California), a retriever must travel over the public highways to fulfill that function. Thus, unlike a truck that is specially designed and equipped to transport the heavy draw-works employed in the oil drilling industry and thus a vehicle that can fulfill its primary function of transporting those heavy loads largely within the confines of an oil field, the module retrievers cannot fulfill their primary function of loading and transporting modules without traveling over and upon public highways.

Accordingly, I would reverse the judgment and remand with directions that judgment be entered in favor of the government.

Judgment AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.