**FIRST NATIONAL BANK OF OMAHA, Plaintiff,**

v.

**THREE DIMENSION SYSTEMS PRODUCTS, INC.,**
**Defendant.**

**Three Dimension Systems Products, Inc., Counterclaimant,**

v.

**First National Bank of Omaha, Counterdefendant.**

No. 8:98CV569.

United States District Court, D. Nebraska.

Jan. 29, 2001.

Bartholomew McLeay, Omaha, NE, for plaintiff.

John R. Douglas, Omaha, NE, for defendant.

## ORDER AND JUDGMENT

BATAILLON, District Judge.

I have before me 3D's oral motions for judgment as a matter of law made pursuant to Federal Rule of Civil Procedure 50 which I took under advisement at the close of the two-week jury trial in this case. *See* Filing No. 344. I also have before me the motion (Filing No. 350) of First National Bank of Omaha (FNBO) made pursuant to Federal Rule of Civil Procedure 59(e) to amend judgment, which is supported by a brief and an index of evidence (Filing No. 351). Finally, I have before me FNBO's motion (Filing No. 352) made pursuant to Federal Rule of Civil Procedure 58 to enter judgment on the verdict.

### Procedural Background

At the close of all the evidence in this case and before the parties' claims were submitted to the jury, the parties made a variety of motions on the record for judgment as a matter of law. At the time, I 1) denied FNBO's motions for judgment as a matter of law on 3D's conversion, copyright, and willful infringement counterclaims; 2) sustained 3D's motion for judgment as a matter of law on its conversion counterclaim and granted injunctive relief; 3) sustained 3D's motion for judgment as a matter of law for actual damages in the amount of $80,000 on its copyright infringement counterclaim; 4) denied 3D's motion for judgment as a matter of law on the willfulness element of its copyright infringement counterclaim; 5) took under advisement 3D's motion for judgment as a matter of law on FNBO's claim for anticipatory breach; and 6) took under advisement 3D's motions for judgment as a matter of law and for injunctive relief on its copyright infringement claims.

The jury returned a verdict on December 11, 2000, for FNBO on its claim for anticipatory breach of contract, but awarded no damages. *See* Filing No. 349. I declined to enter judgment for FNBO, and I now rule on the motions I took under advisement, granting judgment as a matter of law to 3D on its counterclaims for conversion, breach of contract, and willful copyright infringement. FNBO's motions to amend judgment and to enter judgment on the verdict are accordingly denied.

### Discussion

A court may grant judgment as a matter of law when "the evidence is such that, without weighing the credibility of the witness or otherwise considering the weight of the evidence, there can be only one conclusion as to the verdict that reasonable persons could have reached." *GLB Enterprises, Inc. v. United States,* 232 F.3d 965, 968 (8th Cir.2000) (*citing Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946)). The overall evidence is viewed in the light most favorable to the verdict holder, who is given the benefit of all favorable inferences that may be drawn from the evidence. *Id.* (*citing Stockmen's Livestock Market, Inc.*

*v. Norwest Bank,* 135 F.3d 1236, 1240 (8th Cir.1998)).

■ *Anticipatory Breach.* The essential relevant facts in this case have never been in serious dispute, but the interpretation of those facts created a mixed question of law and triable fact about whether 3D's conduct constituted anticipatory breach. By denying 3D's earlier motion for summary judgment, I left the door open for FNBO to establish that under Arizona law, 3D had repudiated the contract by "express[ing] a positive and unequivocal manifestation that [it would] not render the required performance when it [was] due." *Oldenburger v. Del E. Webb Development Co.,* 159 Ariz. 129, 765 P.2d 531, 533 (Ariz.App.1988). All of the parties' remaining claims and defenses depended on that showing by FNBO.

■ I therefore instructed the jury that to recover on its claim for anticipatory breach of contract, FNBO had to prove that 1) 3D stated or showed an unequivocal intent not to perform as promised, and 2) FNBO was ready, willing and offered to perform FNBO's duties under the contract if 3D had not repudiated. Filing No. 348, Jury Instr. No. 29. I now find that given the evidence presented at trial, no reasonable jury could have arrived at the conclusion that 3D had anticipatorily breached the contract with FNBO.

Robert Haller, the FNBO vice-president for retail operations, testified that shortly after assuming his duties following his predecessor's resignation, he decided that FNBO needed to terminate the Platform project. Haller testified that he consulted with staff and reviewed the contract and accounting documents, and concluded by November 10 or 11 that 3D had anticipatorily breached the contract by failing to correct FNBO-identified errors in Stage 1 of the Platform project and by demanding payment of an invoice for $250,000.

Haller purportedly relied upon a fax from 3D dated October 30, 1998, which FNBO apparently received November 2 or 3, 1998. The pertinent part of this fax, "Stage 2 Risks," detailed thirteen risks for which "no contingency plan has been added to the project plan. This means that delays incurred due to the following will probably cause a delay to the delivery of stage 2 and may result in additional charges." Trial Ex. 24 at 3. Haller mentioned that item twelve, which stated, "No support of stage 1 deliverables after Friday 10/30/98," was of particular concern to him since it apparently meant that 3D would make no error corrections to Stage 1 after October 30, 1998. But Haller's interpretation is nonsensical, given that the list merely described factors that might delay delivery of the next stage. The very existence of the list indicated that 3D intended to continue work on Stage 2 of the Platform project. Further, 3D employees testified that 3D fully intended to correct the Stage 1 errors before delivery of Stage 2, planned for January 29, 1999. In deposition testimony that was read during Haller's cross-examination, Haller admitted that by November 2 or 3, 1998, FNBO had failed to identify any errors that were of such a critical nature that the development of Stage 2 could not begin until they were corrected. FNBO was aware that 3D had set aside time and employees to devote exclusively to error correction following installation of Stage 1, but when FNBO delayed in reporting errors, 3D consequently elected to reassign its employees Stage 2 development, postponing the error correction task until later. As a matter of law, such evidence hardly manifests an unequivocal intent on 3D's part not to perform its contractual duties.

Haller further testified that he believed 3D had anticipatorily breached the contract by demanding $250,000 to which Haller believed 3D was not entitled. The trial exhibits tell a different story about the invoice, however. In mid–1998, after Platform development was well underway, the parties discussed modifying the original Platform agreement "without getting the lawyers involved." Trial Ex. 92 at 1, ¶ 1; 2, ¶ 1. Proposed Appendix D to License Schedule 2 split the delivery of the Plat-

form project into two phases, and assumed that each phase would be divided into stages. *See also* Trial Ex. 346. Based on this modification, 3D put the fixed price for Phase 1 development at $725,000, $150,000 more than the original contract price, plus $600 a day for time and materials work. Trial Ex. 44 at 3. FNBO apparently agreed to pay a $150,000 invoice for Stage 1, and evidently suggested that 3D propose a payment schedule for the remaining stages. Trial Ex. 92 at 1, ¶ 12; 3, ¶ 12; *see* Trial Ex. 440, Inv. No. FNBO–034 (for "Platform Project first interim payment"). In a letter to FNBO dated October 14, 1998—less than a month before Haller decided that 3D anticipatorily breached the contract—3D noted that the $250,000 invoice it had sent to FNBO was to fund Stage 2 development. 3D further explained that $300,000 of the fixed price quote therefore would remain to finish Stages 3, 4 and 5 of Phase 1. Trial Ex. 102 at 1, ¶ 1. The letter also set out 3D's revised development proposal for the Platform project, annotated the Platform Design Documents delivered to 3D in May 1998, listed technically impossible or impractical items, and listed time and material charge items. Such detailed proposals and explanations are hardly the work of a party preparing to repudiate a contract.

■ Finally, even assuming FNBO was justified in its belief that 3D had repudiated the contract, FNBO nevertheless failed to comply with the contract provision requiring FNBO to provide 3D with notice of default and an opportunity to cure. *See* Trial Ex. 2 at 9, ¶ 27. Before FNBO was entitled to refuse further performance or to file suit against 3D for anticipatory breach, it was required by both the contract and Arizona law to notify 3D that it considered the uncorrected errors in the Vantage Platform to be a material failure to perform and to give 3D a reasonable opportunity to correct the errors in the software. *See United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 681 P.2d 390, 430 (Ariz.App.1983) (*quoting Irwin v. Murphey*, 81 Ariz. 148, 302 P.2d 534, 537 (1956)); Restatement (Second) of Contracts §§ 237, 241, and 242 (1979) (non-breaching party must give the non-performing party notice of and an opportunity to cure the failure to perform). FNBO, however, moved directly from its decision to terminate the Platform project to the filing of this lawsuit.

Accordingly, I hereby decline to enter judgment on the jury's verdict in favor of FNBO and instead grant 3D's motion for judgment as a matter of law on FNBO's claim for anticipatory breach.

■ *Breach of Contract.* FNBO breached the contract when it failed to pay in full the license fee and maintenance agreement for the Teller software. When 3D notified FNBO on November 23, 1998, that its failure to pay the invoice for Teller maintenance put it in default and that FNBO had thirty days to cure, *see* Trial Ex. 15 at 2, FNBO responded on December 23 by, in effect, making a counteroffer. FNBO offered 3D a check for $74,739.54 as "payment for *all* charges related to the Vantage NT Teller product," Trial Ex. 16 at 1 (emphasis added), thus defaulting on its contractual obligation to purchase five years of software maintenance from 3D for the Teller product at a cost of "12% of $600,000.00, which is $72,000.00 per year, for a total of $162,000.00 per year for 5 years, which is a total of $810,000.00." Trial Ex. 4, Lic. Sch. 2 at ¶ 3.3.

FNBO's proposed "compromise," standing alone without regard to other conduct that arguably represents a breach, represents an abrogation of 3D's obligations under the agreement. I therefore grant 3D's motion for judgment as a matter of law on its breach of contract counterclaim.

■ *Copyright Infringement.* 3D refused to accept the partial tender FNBO offered described above, and formally terminated all agreements and schedules between the parties on January 4, 1999. Trial Ex. 40 at 1. The termination extended to all licenses for use of 3D software and licensed programs. 3D informed FNBO that continued use of "3D software, Li-

censed Programs, or related documentation by FNBO or its affiliated companies, subsidiaries, and clients is, among other things, an infringement of 3D's copyrights, a conversion of 3D's proprietary property and products, and an unauthorized use constituting willful misconduct...." *Id.* FNBO nevertheless continued to use 3D's products in its own offices and those of its affiliates and subsidiaries.

I found at trial that 3D cannot claim any copyright damages for FNBO's continued use of the PPS software. FNBO and 3D's contract for PPS had been fully completed in all aspects including performance and payment for a perpetual license by the time 3D attempted to terminate the licenses to all of its products. There was one contract for both Teller and Platform. The Teller licensing agreement included an ongoing maintenance obligation that was in effect at the time of the dispute. FNBO argues that it had fully paid for the Teller product and its perpetual license. It therefore argues that the Teller license provisions should be severed from the Platform contract dispute. FNBO computes full payment for Teller by applying a portion of its payment for the Platform product toward its maintenance and license obligation. FNBO's December 23, 1998, offer to pay for the Teller perpetual license belies its full payment/severability argument. Furthermore, FNBO's full payment argument is contingent on the validity of 3D's alleged failure to perform on the Platform portion of the contract. This contingent analysis assumes one integrated contact and is inconsistent with a severable contract. I find that FNBO's Teller contractual license obligation was breached along with its Platform contract obligations when it responded to 3D's 30–day notice to cure with a December 23, 1998, counteroffer. I find that FNBO's continued use of 3D's Teller and Platform software after January 4, 1999, constituted not only a breach of contract but also a willful copyright infringement. I therefore grant judgment as a matter of law to 3D on its willful copyright infringement counterclaim.

■ *Damages for Breach and Copyright Infringement.* The amount of damages to which 3D is entitled for FNBO's breach and copyright infringement is a factual question that must be resolved by a new jury. Because the same conduct represented both a breach of the contract and a copyright infringement, however, 3D will not be permitted to recover two separate damage awards. As actual damages on its copyright infringement counterclaim, 3D will receive $80,000, the value of the Teller software to FNBO as testified to by FNBO's own expert, John C. Jarosz. This amount represents a minimum award for FNBO's copyright infringement. If the new jury determines that damages for breach of contract are less than $80,000, then 3D will receive the amount awarded by the jury plus whatever additional amount is necessary to reach a total award of $80,000.

In addition, the new jury will be responsible for determining the amount of statutory damages due to 3D on its willful copyright infringement counterclaim.

*Conversion.* FNBO asks me to set aside the judgment as a matter of law that I granted to 3D on its conversion counterclaim. For the reasons stated on the record during the trial of this issue, I decline FNBO's invitation.

■ *Injunctive Relief.* Based on my grant of judgment as a matter of law to 3D on its copyright and conversion claims, 3D is entitled pursuant to Federal Rule of Civil Procedure 54(c) to the injunctive relief it requested on those claims in its second amended counterclaim. *See* Filing No. 40. Accordingly, FNBO is ordered to cease any further use, distribution, marketing, or sale of the Vantage Teller and Vantage Platform software in all of its own offices and in the offices of all its subsidiaries and client banks, and to return all extant copies of that software to 3D no later than March 1, 2001. In addition, FNBO shall return to 3D no later than March 1, 2001, if it has not already done so, the forty-three mainframe software

components/enhancements listed in the attachment to Exhibit 568.

*Interlocutory Appeal.* Given my rulings in this case and because there has already been one jury trial, the parties are hereby authorized to apply for an interlocutory appeal pursuant to Federal Rule of Civil Procedure 28 U.S.C. § 1292(b). If the parties decide to apply for an appeal, further proceedings in this court shall be stayed pending the Eighth Circuit's decision on the application for an appeal.

IT IS THEREFORE ORDERED:

1) 3D's oral motion, *see* Filing No. 344, for judgment as a matter of law on FNBO's claim for anticipatory breach, taken under advisement at the close of all the evidence in this case, is granted.

2) 3D's oral motion, *see* Filing No. 344, for judgment as a matter of law and for injunctive relief on its copyright infringement counterclaim, taken under advisement at the close of all the evidence in this case, is granted.

3) A new trial on the amount of damages due 3D for FNBO's breach of contract and willful copyright infringement shall commence on **March 19, 2001, at 8:30 a.m.,** or at such time thereafter as the parties may be heard.

4) As actual damages on its copyright infringement counterclaim, 3D is awarded, as a minimum, the amount of $80,000.00.

5) Because FNBO both breached the contract and willfully infringed 3D's Teller copyright with the same conduct, 3D will not be permitted to recover two separate damage awards. If the new jury determines, however, that damages for breach of contract are less than the $80,000.00 awarded 3D as actual copyright damages, then 3D will receive the amount awarded by the jury plus whatever additional amount is necessary to reach a total award of $80,000.00.

6) FNBO's motion (Filing No. 350) to amend judgment on 3D's conversion counterclaim is denied.

7) FNBO's motion to permit reply brief (Filing No. ___) in support of its motion to amend judgment is denied.

8) FNBO's motion (Filing No. 352) to enter judgment on the jury's verdict for FNBO on its anticipatory breach is denied.

9) Judgment as a matter of law is hereby entered for 3D on its counterclaims for breach of contract, willful copyright infringement, and conversion.

10) FNBO shall immediately cease using, distributing, marketing, or selling the Vantage Teller and Vantage Platform software in all of its own offices and in the offices of all its subsidiaries and client banks, and shall return all extant copies of that software to 3D **no later than March 1, 2001.**

11) FNBO shall return to 3D **no later than March 1, 2001,** if it has not already done so, the forty-three mainframe software components/enhancements listed in the attachment to Trial Exhibit 568.

12) I shall again defer my decision on 3D's appeal (Filing No. 311) of the magistrate's order (Filing No. 304) dated September 21, 2000, *see* Filing No. 329, pending trial of the remaining issues in this case.

13) Any award of costs and attorney fees shall be deferred pending trial of the remaining issues in this case.

14) The parties may apply for an interlocutory appeal pursuant to Federal Rule of Civil Procedure 28 U.S.C. § 1292(b). If the parties decide to apply for an appeal, further proceedings in this Court shall be stayed pending the Eighth Circuit's decision on the application for an appeal.